557 So.2d 1136 (1990)
Michelle Leonette RODGERS, Plaintiff-Appellant,
v.
Bobby Gene JOHNSON, Lucy Laurene Smith Johnson, Morris Real Estate & Associates, Inc., Benee Morris-Irwin and Ed Carlyle, Defendants-Appellees.
No. 21,300-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1990.
*1137 Peatross, Greer and Frazier by John M. Frazier, Shreveport, for plaintiff-appellant.
Blanchard, Walker, O'Quin & Roberts by James W. Wyche, Shreveport, for defendants-appellees Morris Real Estate & Associates, Inc., Benee Morris-Irwin and Ed Carlyle.
Before HALL, NORRIS and HIGHTOWER, JJ.
HIGHTOWER, Judge.
Plaintiff, Michelle Leonette Rodgers, appeals a summary judgment rendered against her and in favor of Morris Real Estate and Associates, Inc., and its salespersons, Benee Morris-Irwin ("Irwin") and Ed Carlyle. For the reasons hereinafter expressed, we reverse and remand the matter to the trial court.

BACKGROUND
On November 25, 1986, plaintiff purchased a house from Bobby Gene Johnson and his wife for the price of $55,700. Irwin and Carlyle assisted and represented plaintiff in the transaction. Soon after moving into her new residence, plaintiff began to discover significant defects in the premises. More particularly, stair-step shaped cracks in the exterior brick veneer, separations and cracking in the interior walls of the house, and other foundation-related problems appeared.
Apparently unable to amicably resolve her dispute with the vendors and realtors, plaintiff commenced the instant suit on November 24, 1987. It seeks rescission, or, alternatively, a price reduction, due to unapparent vices which could not have been discovered by simple inspection, and also seeks damages. Named as defendants were the Johnsons, Morris Real Estate, Irwin, and Carlyle, the liability of the latter three, for damages, being predicated on their failure to advise plaintiff of the defects despite the reliance she had placed in their expertise.
Morris Real Estate and the two agents subsequently filed a motion for summary judgment and advanced several supporting arguments. Not occupying the position of sellers, no redhibitory action is available against them, they contended. (The correctness of that position eventually was conceded by plaintiff, who asserted that the realtors nevertheless were liable for negligent or intentional misrepresentations.) Next, it was argued that liability arises only for a failure to disclose defects of which the real estate agent had knowledge, thus requiring willful, knowing or negligent misrepresentation. It was maintained that the affidavits and depositions demonstrate that no representative of Morris had knowledge of any hidden or unapparent defects in the house. In their affidavits, Irwin and Carlyle stated flatly that they were cognizant of no defects prior to the sale. Finally, it was urged that language in the sales agreement between plaintiff and the Johnsons absolves the brokers and agents from any liability.
*1138 The motion was argued to the trial court and granted. This appeal ensued.

DISCUSSION
Of course, the legal principles regarding a summary judgment are well settled. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966; Chaisson v. Domingue, 372 So.2d 1225 (La.1979). The burden of proof in a motion for summary judgment is on the mover to establish that there are no genuine issues of material fact. This is a difficult burden. Only when reasonable minds must inevitably concur is summary judgment warranted and any doubt should be resolved in favor of trial on the merits. Sargent v. La. Health Serv. & Indem. Co., 550 So.2d 843 (La.App. 2d Cir.1989); Ebarb v. Erwin, 530 So.2d 1166 (La.App. 2d Cir. 1988). The mover's pleadings, affidavits and documents are to be scrutinized closely while those of the opponent are to be indulgently treated. Toole v. Tucker, 519 So.2d 348 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1156 (La.1988). Summary judgment is not to be used as a substitute for a full trial of a controverted factual issue which is material to the decision of the case. The likelihood that a party will be unable to prove his allegations at trial does not constitute a basis for entering summary judgment. Adams v. Traveler's Ins. Co., 420 So.2d 507 (La.App. 2d Cir.1982), writ denied, 422 So.2d 426 (La.1982). Making evaluations of credibility has no place in determining a summary judgment. Watson v. Cook, 427 So.2d 1312 (La.App. 2d Cir.1983). A motion for summary judgment is not appropriate for disposition of cases requiring a judicial determination of subjective facts such as motive, intent, good faith, and knowledge. Watson v. Cook, supra; Ortego v. Ortego, 425 So.2d 1292 (La.App. 3rd Cir.1982), writ denied, 429 So.2d 147 (La.1983), appeal after remand, 471 So.2d 1106 (La.App. 3rd Cir.1985).
A purchaser's remedy against realtors is in damages for fraud, under LSA-C.C. Art. 1953, et seq., or for negligent misrepresentation, under LSA-C.C. Art. 2315. Davis v. Davis, 353 So.2d 1060 (La. App. 2d Cir.1977); Reeves v. Weber, 509 So.2d 158 (La.App. 1st Cir.1987).
Pertinent portions of deposition testimony disclosed that in approximately late September 1986, the Johnsons listed their home in Bossier City for sale with Morris Real Estate. The actual listing agent was Carlyle, a friend of the Johnson family. He apparently came to the house late one evening and listed it with little or no inspection of the exterior or interior, save for looking into each room. Thereafter, prior to the sale, he returned to the residence only once, that occurring to place a sign in the yard and take a picture for a compilation of homes for sale. However, Mr. Johnson, despite believing a stair-step crack on the front exterior of the house to be quite obvious, stated that he probably advised Carlyle of that defect. [In his deposition, Carlyle acknowledged that such cracks are one "telltale" indication of a cracked foundation.] Additionally, cracks in the interior of the house, particularly near windows, had been caulked and painted. Although claimed by Mr. Johnson to be similarly obvious, those imperfections were pointed out to no one.
Soon after the house was placed on the market, Irwin was contacted by her friend, plaintiff, who wanted to find a new home which would place her children in a different school district. After further inquiry and reflection, Irwin decided the Johnson residence satisfied plaintiff's requirements. Around the end of October, plaintiff and Irwin went together to see the house.
According to plaintiff, during the initial visit, she and Irwin looked around the house with Mrs. Johnson. The bedroom on the rear of the residence was being painted at that time. After viewing the premises, plaintiff and Irwin went to the real estate agency office and discussed the house with Carlyle.
*1139 Several days later, plaintiff, along with her boyfriend and again accompanied by Irwin, returned to the house and found both Mr. and Mrs. Johnson there. While inspecting the property on that occasion, cracks in the patio were observed. Mrs. Johnson indicated that the patio was a structure separate from the house. Nevertheless, being concerned, plaintiff inquired about the possibility of an engineer examining the house. However, Mr. Johnson stated, in response, that a friend of his, an engineer, had already conducted an inspection and found no cause for alarm since the patio was a separate structure.
Mr. Johnson recalled that during plaintiff's second, and final, tour of the house, he told her that work on the utility room had been performed by Twin City Foundation. More particularly, jacks were placed under the room so that it could be raised and stabilized. In connection with the foundation work, a new overlaying slab was also poured in the carport. As with the patio, however, plaintiff was told the utility room slab was separate from that of the house. Mr. Johnson was uncertain whether the discussions concerning the utility room were conducted within Irwin's hearing. The individual who performed the utility room work also had inspected the remainder of the house at the Johnsons' request. Mr. Johnson conceded that separations in the frieze boards and cracks in the brick mortar, neither of which were disclosed to plaintiff, had prompted his desire for that inspection.
Mr. Johnson remembered that plaintiff was concerned about the house's foundation. Moreover, plaintiff apparently related the utility room foundation problems to Carlyle inasmuch as, on the night after plaintiff's second visit, Mr. Johnson received a phone call from him to inquire about any problems with the foundation. As he had explained to plaintiff, Mr. Johnson described to Carlyle the work that had been performed and conveyed his understanding that no further problems existed. Mrs. Johnson recalled that Carlyle also talked to her as to whether a problem existed with the foundation, and she essentially confirmed her husband's explanation.
Mr. Joe Wilburn Morris, president of Morris Real Estate and Irwin's father, related that he had no connection with either the listing or sale of the Johnson home. In fact, he claimed to have never visited the house until the present dispute arose following the sale. Interestingly, though, Mr. Morris acknowledged that houses in Green Acres, the subdivision in which the Johnson residence is located, historically have experienced slab problems. He indicated that he was aware of several homes in that locale having cracked slabs.
As the foregoing discussion demonstrates, the knowledge possessed by the agents is open to question, notwithstanding the assertions of ignorance contained in the affidavits. While plaintiff herself, like the agents, was clearly cognizant of prior foundation difficulties in certain parts of the premises, she was assured of the soundness of the rest of the house. The agents supposedly received the same pledge of flawlessness.
Yet, the content of the alleged conversation between Mr. Johnson and Carlyle concerning the extent of the problem and the repairs in the utility room, for example, is unclear. Evidence strongly suggests that Carlyle became aware of the stair-step shaped cracks on the house's exterior, a defect which he himself acknowledged to be indicative of a possible cracked foundation. Furthermore, it is uncertain what discussions the realtors may have had among themselves concerning the house, an issue of importance in light of Mr. Morris' awareness of homes in the Johnsons' subdivision with cracked slabs. In addition, acceptance of the claim of lack of knowledge urged by Irwin and Carlyle would entail a credibility determination inappropriate on a motion for summary judgment. See Watson, supra. Ascertainment of what knowledge, if any, the realtors possessed would involve the impermissible determination of a subjective fact via summary judgment. See Watson, supra; Ortego, supra.
Finally, Morris and the agents maintain, by reason of certain language in the *1140 sales agreement, they are absolved from any liability involving the house.[1] The particular provision in question reads as follows:
It is further understood that the Brokers and the agents involved in negotiating this agreement are not guarantors of performance, condition of premises or representations made by either party and have acted only to bring the parties together. Said brokers and agents are relieved of any liability in such regard and indemnified by the parties for any such claim, demand or liability.
The pertinent portion simply provides, of course, that the agents are "not guarantors of.... condition of the premises...."
Such a provision does not relieve movants of liability under the circumstances of this case. The sales pact, in other language, is expressly characterized as "the entire agreement between seller and purchaser." Thus, Morris and its agents were not parties to the contract whose exculpatory provision they now enlist to shield them from accountability. Contracts for the benefit of third parties must clearly express that intent. Jackson v. Brumfield, 442 So.2d 518 (La.App. 1st Cir.1983). More importantly, however, plaintiff does not seek damages from the realtors solely as "guarantors" of the condition of the premises. Instead, she has premised their liability on a failure to disclose vices of which they were cognizant.

CONCLUSION
For the foregoing reasons, the judgment appealed is reversed and the matter remanded to the trial court. All costs of this appeal are to be borne by appellees.
REVERSED AND REMANDED.
NOTES
[1] Interestingly, the sales agreement reveals that it was confected between plaintiff and the Johnsons on September 26, 1986, a date prior to, as shown by deposition accounts, plaintiff's first visit to the house. In fact, Carlyle recalled that the listing itself transpired in the latter part of September. Such inconsistency discloses the parties' difficulty with recollection of events and, hence, further emphasizes the impropriety of resolving a subjective matter, such as knowledge, on a motion for summary judgment.