612 So.2d 816 (1992)
Prentiss E. SMITH, M.D.
v.
OUR LADY OF THE LAKE HOSPITAL, INC. d/b/a Our Lady of the Lake Regional Medical Center, Kenneth C. Cranor, M.D., A. Foster Sanders, M.D., Donald R. Cowick, M.D., W. Howard Kisner, M.D., M.J. Rathbone, Jr., M.D., Louis P. Laville, Jr., M.D., B. Eugene Berry, M.D., W. Redfield Bryan, M.D., Mr. Sidney Duplessis, Mr. W.H. Leblanc, Jr., Mr. Roland Toups, Mr. Robert Davidge, and Others Whose Identities and/or Roles are Unknown to Plaintiff at this Time.
No. 91 CA 2253.
Court of Appeal of Louisiana, First Circuit.
December 23, 1992.
*818 Kevin P. Monahan, Baton Rouge, for plaintiff-appellant Prentiss E. Smith, M.D.
Lloyd J. Lunceford, Baton Rouge, for defendants-appellees Kenneth C. Cranor, M.D., D.R. Cowick, M.D., A.F. Sanders, M.D., W.H. Kisner, M.D., L.P. Laville, M.D.
T. MacDougall Womack, Baton Rouge, for defendants-appellees OLOL Hospital, M.J. Rathbone, M.D., W.R. Bryan, M.D., S. Duplessi, W.H. Lelanc, R. Toups, R. Davidge.
Leon Gary, Baton Rouge, for defendants-appellees E. Berry, M.D., D. Davis, M.D., C. Sheely, M.D., CVT Surgical Center.
Before CARTER and LeBLANC, JJ., and CHIASSON,[1] J. Pro Tem.
CARTER, Judge.
This is an appeal from a trial court judgment granting a motion for summary judgment.

BACKGROUND
In Smith v. Our Lady of the Lake Hospital, Inc., 960 F.2d 439, 441-442 (5th Cir. 1992), in reviewing a federal action arising out of the same factual scenario giving rise to the instant state court action, the federal appellate court set forth the following relevant facts:
Smith [Dr. Prentiss Smith] was a cardiovascular surgeon associated with Our Lady of the Lake Hospital ("the hospital") in Baton Rouge, Louisiana. In 1982 the hospital's executive committee began investigating complaints from recovery room nurses about Smith's medically improper and personally abusive and offensive conduct. The ad hoc committee established for the review gave Smith two months to resolve his problems or his hospital privileges would be terminated; this probation was later extended for a year.
During the following year, the hospital began to review the mortality rates of patients undergoing certain cardiac and thoracic procedures, including those on whom Smith had operated. One element of this review was a statistical table comparing the mortality rates for certain surgical procedures of several doctors, including Smith. The table apparently was prepared by Smith's principal competitor, Dr. B. Eugene Berry, and indicated that Smith had a relatively high mortality rate for several procedures, although as Smith points out, the table did not include data about the relative difficulty of each individual operation or about the doctors who allegedly had higher mortality rates than did he.
After the hospital's cardiovascular staff reviewed Smith's level of care and did not find it inadequate, the executive committee asked the independent Society *819 of Thoracic Surgeons ("the society") to study the data, informing the society that the doctor's mortality rates were unacceptable. During the course of the society's review, representatives of the hospital and the executive committee contacted the society by mail and telephone, although nothing in the record indicates that those communications were inherently fraudulent. The hospital suspended Smith's surgical privileges in March 1985, and in May the society's ethics committee stated that Smith's level of care was substandard. At Smith's request, two other hospital committees reviewed his record and found it wanting.
After he was suspended, Smith pursued the hospital's appeal process, during which a nonbinding ad hoc committee reported to the executive committee that the evidence presented to them was insufficient to support the suspension. The committee did conclude that all of Smith's surgeries should be pre-approved by another surgeon, that another surgeon should be present whenever Smith operated, and that his behavior was shameful. His privileges were terminated permanently on June 27, 1986. (footnote omitted).
In June 1987, Smith filed a civil RICO suit in federal court against the hospital, six doctors who were members of the executive committee, five members of the board of trustees, and Berry. On June 26, 1987, Smith filed the instant suit for damages in state court against many of the same individuals alleging causes of action for breach of contract; wrongful misrepresentation, negligence and other tortious conduct; unfair trade practices; defamation; and anti-trust violations. The defendants filed answers and various other responsive pleadings.
Thereafter, the defendants filed a motion for summary judgment contending that LSA-R.S. 13:3715.3 C provides all defendants with qualified immunity from liability arising out of medical peer review activity. After a hearing, the trial court granted defendants' motion for summary judgment and dismissed Smith's suit with prejudice. From this adverse judgment, Smith appeals raising the following issues:
A. Whether or not the Trial Court improperly weighed conflicting evidence and made credibility determinations as to the witnesses.
B. Whether or not the Trial Court improperly determined the Motion for Summary Judgment because material facts existed as to the subjective facts, opinions, motives, intent, malice and/or knowledge of the committee members.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine factual dispute. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d 1115, 1120 (La.App. 2nd Cir.), writ denied, 587 So.2d 695 (La.1991). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Bercegeay v. Cal-Dive International, Inc., 583 So.2d 1181, 1183 (La.App. 1st Cir.), writ denied, 589 So.2d 1070 (La.1991); Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d 381, 383-85 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La. 1991).
A fact is material if it is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989); Eads Operating Company, Inc. v. Thompson, 537 So.2d 1187, 1194 (La.App. 1st Cir. 1988), writ denied, 538 So.2d 614 (La.1989).
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only *820 when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d at 383-85. To satisfy this burden, the mover must meet a strict standard by showing that it is quite clear as to what the truth is and excludes any real doubt as to the existence of material fact. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d at 1120. The court must closely scrutinize the papers supporting the position of mover, while the papers of the party opposing the motion are to be treated indulgently. Ortego v. Ortego, 425 So.2d 1292, 1297 (La.App. 3rd Cir.1982), writ denied, 429 So.2d 147 (La. 1983).
When the court is presented with a choice of reasonable inferences to be drawn from subsidiary facts contained in affidavits and attached exhibits, reasonable inferences must be viewed in the light most favorable to the party opposed to the motion. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d at 1120. The credibility of witnesses or doubt as to whether a party alleging a fact will be able to sustain his burden of proof on the merits are improper considerations in determining the existence of material fact. Johnson v. Slidell Memorial Hospital, 552 So.2d 1022, 1023 (La. App. 1st Cir.1989), writ denied, 558 So.2d 571 (La.1990). In fact, the Louisiana courts have made it clear that the weighing of conflicting evidence has no place in summary procedure. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d at 1120.
Moreover, LSA-C.C.P. art. 967 requires that affidavits submitted in connection with a motion for summary judgment be made upon personal knowledge. Opinions or beliefs of an expert based on his or her special training and experience do not meet the requirement of personal knowledge. Ivy v. Freeland, 576 So.2d 1117, 1119 (La.App. 3rd Cir. 1991). Also, ultimate facts and conclusions of law contained in supporting affidavits cannot be considered in granting a motion for summary judgment. Urbeso v. Bryan, 583 So.2d 114, 116 (La.App. 4th Cir.1991). Nor is a motion for summary judgment suitable for disposition of cases requiring a judicial determination of subjective facts such as motive, intent, good faith or knowledge. Penalber v. Blount, 550 So.2d at 583; Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d at 1120; Fogg v. Fogg, 571 So.2d 838, 842 (La.App. 3rd Cir.1990), writ denied, 575 So.2d 372 (La.1991); Morgan v. Campbell, Campbell & Johnson, 561 So.2d 926, 929 (La.App. 2nd Cir.1990); Rodgers v. Johnson, 557 So.2d 1136, 1138 (La.App. 2nd Cir.1990).
Summary judgments are not favored and should be used cautiously and sparingly, and any reasonable doubt should be resolved against the mover. Yocum v. City of Minden, 566 So.2d 1082, 1086 (La. App. 2nd Cir.1990). In determining whether material issues have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). This is true even if grave doubts exist as to a party's ability to establish disputed facts at trial. Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068, 1070 (La.App. 3rd Cir.1985). A summary judgment is not a substitute for a trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d at 775. It is not the function of the court on a motion for summary judgment to determine or even inquire into the merits of the issues raised. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d at 1120.
With regard to the standard of review to be applied by this court, the Louisiana Supreme Court in Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991), recently noted that appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate.
*821 Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, Division of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir.1988).
In the instant case, defendants contend that they are entitled to qualified immunity from liability for the actions taken or recommendations made by them during the peer review process of Smith's performance.
LSA-R.S. 13:3715.3 C sets forth the immunity with regard to committee members as follows:
No member of such committee shall be liable in damages to any person for any action taken or recommendation made within the scope of the functions of such committee if such committee member acts without malice and in the reasonable belief that such action or recommendation is warranted by the facts known to him. (emphasis added).
From the plain wording of the statute, there are two prerequisites for the qualified immunity set forth in LSA-R.S. 13:3715.3 C to apply. First, the committee member must have acted without malice. Second, the committee member must have acted with a reasonable belief that the action taken or recommendation made was warranted under the known facts.
Both of these elements require the trial court to determine the subjective motive and knowledge of the committee members in contravention of the jurisprudential prohibition against such inquiry on a motion for summary judgment.
In Chelette v. Wal-Mart Stores, Inc., 535 So.2d 558, 560 (La.App. 3rd Cir.1988), writ denied, 537 So.2d 1170 (La.1989), which involved a suit for false imprisonment, the trial court denied the defendant's motion for summary judgment and, after a trial on the merits, entered judgment in favor of the plaintiff. In reviewing the denial of the motion for summary judgment on appeal, the appellate court noted that in order to detain an individual for shoplifting, there must be reasonable cause to believe that person has committed a theft, which requires an intent to deprive another of property. In affirming the denial of the summary judgment, the appellate court noted that:
[D]efendants must show that there was reasonable cause to believe that plaintiff intended to commit a theft of its goods in order to justify the detention of plaintiff on suspicion of shoplifting. Intent is an issue of material fact which is inappropriate for summary judgment. (citations omitted), (emphasis added).
535 So.2d at 560.
In Fogg v. Fogg, 571 So.2d at 841-42, the trial court granted a motion for summary judgment upon finding that a valid donation inter vivos had been made. Our brethren of the Third Circuit, in reversing the trial court judgment, noted that in order to effect a valid donation the substantive requirements of divestment and donative intent must be fulfilled and that summary judgment is not appropriate when the outcome of the case depends upon subjective facts such as motive or intent.
In the instant case, a determination of whether defendants are entitled to the qualified immunity requires the trial court to determine the subjective motive and knowledge of the committee members. In fact, in his "Findings of Fact and Conclusions of Law," the trial judge noted that "the ultimate decision to terminate the plaintiff's privileges at Our Lady of the Lake Hospital was made without malice and in the reasonable belief that such action was warranted by the facts and evidence presented." Clearly, summary judgment is inappropriate for disposition of a case based upon such subjective facts. Moreover, it appears that the trial judge, in granting defendants' motion for summary judgment, weighed the credibility of the various witnesses whose affidavits or depositions were submitted in support of and in opposition to the motion for summary judgment. In his "Findings of Fact and Conclusions of Law," the trial judge discussed the depositions of four physicians and noted:

*822 It appears that their participation was limited to attending one joint meeting in April of 1984 of the Cardiovascular Diagnostic Service and Thoracic and Cardiovascular Service Committee. Also, it appears that each of these doctors abstained from answering the questions of whether or not Dr. Smith's mortality rate was acceptable and whether or not he met the applicable standard of care. Their review was inconclusive and they all recommended further study. None of these doctors participated in or were privy to the additional review by the numerous Committees which later investigated Dr. Smith except for Dr. Craft who attended one additional meeting of the Executive Committee.
Although each has testified that they saw no problems with Dr. Smith's performance, they were careful to qualify their responses by noting the very limited nature of their April, 1984 twelve case review. The limited nature of these four doctors must be weighed against the more exhaustive analysis by committees which ensued during the following three years. They were not privy to the scope or nature of the additional peer reviews which were undertaken and could not render an opinion about whether the Hospital's ultimate decision to terminate plaintiff's privileges was warranted. (emphasis added).
Moreover, it is apparent from the trial judge's "Findings of Fact and Conclusions of Law," that he improperly considered the credibility of witnesses in determining the existence of material fact. The trial judge noted that:
In Dr. Waldhausen's affidavit, ... he states that "... At no time did any representative of Our Lady of the Lake Regional Medical Center attempt to influence the subcommittee's work or conclusions." This conclusion is supported by the affidavits of Dr. Kouchoukos and Dr. Leaman, affidavits also attached. Also attached is the curriculum vitae of each doctor and to say the least, they are very impressive doctors in their fields of expertise.
Considering the entire record, we find that the trial judge in the instant case erred in granting defendants' motion for summary judgment.

CONCLUSION
For the above reasons, the judgment of the trial court is reversed, and the case is remanded to the trial court for further proceedings consistent with the views expressed herein. Defendants are cast for all costs.
REVERSED AND REMANDED.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.