964 So.2d 1049 (2007)
Alice Rooney SCHINDLER
v.
William H. BIGGS, III.
No. 2006 CA 0649.
Court of Appeal of Louisiana, First Circuit.
June 8, 2007.
Rehearing Denied August 17, 2007.
Jeffrey A. Jones, Mandeville, Counsel for Plaintiff/Appellee Alice Rooney Schindler.
F. Sherman Boughton, Jr., Jason M. Bigelow, New Orleans, Counsel for Defendant/Appellant William H. Biggs, III.
Mark D. Higdon, Thomas E. Richards, Covington, Counsel for Intervenor/Appellee Succession of Charles V. Schindler.
Before: C.J. CARTER, KUHN, PETTIGREW, GAIDRY, and WELCH, JJ.
GAIDRY, J.
In this case, defendant appeals a summary judgment rendered against him. We reverse in part and affirm in part.

FACTS AND PROCEDURAL HISTORY
Alice Rooney Schindler filed a petition for writ of attachment and garnishment on November 17, 2003, seeking the return of money fraudulently taken from her by defendant, William H. Biggs, III. The circumstances leading to the petition are as follows. Mrs. Schindler lived with her *1051 husband, Charles V. Schindler[1]; her former daughter-in-law, Anna K. Schindler; and Anna's boyfriend, Biggs, in a house that Mrs. Schindler purchased. Mrs. Schindler was elderly and had several strokes over the years, and Anna and Biggs helped to care for her. In September 2003, Mrs. Schindler requested that Charles Schwab & Co., Inc. ("Charles Schwab") sell one half of a municipal bond and send her the proceeds. On September 9, 2003, Mrs. Schindler and Biggs opened a joint checking account at Whitney National Bank and deposited the $254,153.60 check from Charles Schwab. Mrs. Schindler, who had no recollection of ever receiving the check or going to the bank with Biggs, contacted Charles Schwab several times about the check. Upon finally learning from Charles Schwab that the check had been cashed, Mrs. Schindler contacted Biggs, who told her that the check had come in the mail and that he had taken her to Whitney Bank where they had opened a joint checking account and deposited the check. Mrs. Schindler then contacted Whitney Bank to determine if this was true and learned that all of the money had already been withdrawn from the account by Biggs.
When Biggs refused to return the money, Mrs. Schindler filed suit alleging conversion. A writ of attachment issued on November 17, 2003, seizing real estate owned by Biggs. Mrs. Schindler later amended her petition to name additional parcels of real estate owned by Biggs, and an amended writ of attachment issued on February 18, 2004. Biggs filed an answer stating that there was no conversion, but rather that Mrs. Schindler had given him the money as either a remunerative or gratuitous donation. Mr. Schindler[2] later intervened in the suit, claiming that the money allegedly given to Biggs was community property and that he did not concur in any donation, as is required by La. C.C. art. 2349.[3] Mrs. Schindler also filed a Second Amended Petition, asserting that Biggs had converted an additional $1,000.00 from her, and asserting a claim for the severe emotional distress and mental anguish she suffered as a result of Biggs' conversion of the funds she had invested for her retirement. In a Third Amended Petition, Mrs. Schindler asked for attorney's fees, court costs, and other expenses incurred in pursuit of her claim.
Mrs. Schindler filed a motion for summary judgment on her Original and First Amended Petitions.[4] Attached to the motion was her affidavit outlining the facts surrounding the conversion of funds and the damages she suffered as a result of the conversion. The executor of Mr. Schindler's estate intervened in Mrs. Schindler's motion for summary judgment and attached his own affidavit, stating that shortly before Mr. Schindler died, he advised him that his wife had withdrawn funds from a Charles Schwab account without his concurrence and had deposited the funds into a joint bank account, that *1052 Biggs had withdrawn all of the funds, and that he desired to have legal action taken to obtain a return of the funds.
In opposition to the motion, Biggs filed the affidavits of Anna K. Schindler, Anna Dio Schindler[5], and Margaret Stretzinger[6]. Anna K. Schindler stated that she and Biggs never received a salary for the "numerous tasks, chores, and errands" they performed for the Schindlers from 1997 until the fall of 2003, but that in 2003, Mrs. Schindler stated that she was planning to give a large sum of money to Biggs. Anna K. Schindler also stated that she witnessed Mr. Schindler confronting his wife about this donation shortly after it was made. Finally, Anna stated that in the final months of Mr. Schindler's life, he had told her that he knew that his wife had intended to make the donation to Biggs for all that he had done for them. Anna Dio Schindler stated that in 2003, she heard Mrs. Schindler say that she was planning to give a large sum of money to Biggs, and that towards the end of Mr. Schindler's life, when he was hospitalized, Mr. Schindler acknowledged to her that Mrs. Schindler had given the money to Biggs. Margaret Stretzinger stated that she had been present on numerous occasions when Mr. and Mrs. Schindler discussed Mrs. Schindler giving money to Biggs, and that she heard Mr. Schindler say that he was aware of the donation and that his wife had intended to make the donation in payment for all that Biggs had done for them.
After a hearing, the trial court granted Mrs. Schindler's motion for summary judgment and Mr. Schindler's Intervention as to the Original and First Amended Petitions, and rendered judgment in favor of Mrs. Schindler and the succession of Mr. Schindler in the amount of $254,153.60, plus interest. The court also awarded Mrs. Schindler attorney's fees and costs in the amount of $20,196.00.[7] The court maintained the writ of attachment and ordered Biggs' property sold in order to satisfy the judgment. Biggs appealed, asserting that the trial court erred in granting summary judgment against him and in awarding attorney's fees.

DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Summary judgment is favored and "is designed to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2).
*1053 The initial burden of proof remains with the mover and is not shifted to the non-moving party until the mover has properly supported the motion and carried the initial burden of proof. Only then must the non-moving party "submit evidence showing the existence of specific facts establishing a genuine issue of material fact." See, Scott v. McDaniel, 96-1509, p. 5 (La.App. 1 Cir. 5/9/97), 694 So.2d 1189, 1191-1192, writ denied, 97-1551 (La.9/26/97), 701 So.2d 991. If the non-moving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. La. C.C.P. arts. 966 and 967.
When the court is presented with a choice of reasonable inferences to be drawn from subsidiary facts contained in affidavits and attached exhibits, these reasonable inferences must be viewed in the light most favorable to the party opposed to the motion. The credibility of witnesses or doubt as to whether a party alleging a fact will be able to sustain his burden of proof on the merits are improper considerations in determining the existence of material fact. Likewise, a motion for summary judgment is not suitable for the disposition of cases requiring a judicial determination of subjective facts such as motive, intent, good faith or knowledge. Smith v. Our Lady of the Lake Hosp., Inc., 612 So.2d 816, 820 (La.App. 1 Cir. 1992), writ granted, 93-2512 (La.2/25/94), 632 So.2d 768, aff'd in part, rev'd in part, 93-2512 (La.7/5/94), 639 So.2d 730.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Sanders, 96-1751 at 7, 696 So.2d at 1035. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Walker v. Phi Beta Sigma Fraternity (Rho Chapter), 96-2345, p. 6 (La.App. 1 Cir. 12/29/97), 706 So.2d 525, 528.
An inter vivos donation is an act by which a donor irrevocably divests himself of the thing given, in favor of donee who accepts it. La. C.C. art. 1468. Such a donation may be either gratuitous, onerous, or remunerative. Gratuitous donations are made without condition and merely from liberality, while onerous donations are burdened with charges imposed upon the donee, and remunerative donations are made in recompense for services rendered. La. C.C. art. 1523.
The donee has the burden of proving the donation, and this proof must be strong and convincing. Arnold v. Fenno, 94-1658 (La.App. 4 Cir. 3/16/95), 652 So.2d 1078, 1080. In order for a donation to be valid, there must be a divestment, accompanied by donative intent. Donative intent is an issue of fact. In this case, conflicting affidavits were offered as to Mr. and Mrs. Schindler's intent, creating a genuine issue of material fact. While the trial court may ultimately conclude that Mrs. Schindler's testimony that she never intended to give any money to Biggs and that she was taken advantage of after having a stroke, is more credible than that of the other affiants, this was not an appropriate situation for summary judgment. Furthermore, regarding Mr. Schindler's argument that the alleged donation was null because he did not concur, there is an exception to the concurrence requirement when the other spouse makes a gift of a value commensurate with the economic position of the spouses at the time of the donation. Since there was nothing in the record on the summary judgment as to the Schindlers' economic position at the time of the donation, this issue was also not *1054 appropriate for summary judgment. For these reasons, the trial court erred in granting summary judgment on these issues.
Additionally, since summary judgment was not warranted in this matter, the award of attorney's fees was also inappropriate.

DECREE
The August 8, 2005 and August 18, 2005 trial court judgments are reversed insofar as they granted summary judgment on Mrs. Schindler's Original and First Amending Petitions and on the intervention and awarded attorney's fees. We do not reverse that portion of the August 18, 2005 trial court judgment recognizing and maintaining the writs of attachment. Costs of this appeal are to be shared equally by the parties.
REVERSED IN PART, AFFIRMED IN PART.
CARTER, C.J., and PETTIGREW, J, concur.
KUHN, J., dissents and assigns reasons.
KUHN, J., dissenting.
The majority errs in reversing the trial court's August 18, 2005 judgment. In response to plaintiff's conversion suit, defendant, Mr. Biggs, asserted the defense of a remunerative or onerous donation.[1] As such, to support his defense, Mr. Biggs had the burden of establishing the donation took place by "strong and convincing evidence."
Conversion is the unlawful interference with the ownership or possession of a movable, including when possession is acquired in an unauthorized manner. Johnson v. Hardy, 98-2282, p. 6 (La.App. 1st Cir.11/5/99), 756 So.2d 328, 331. Plaintiff's deposition testimony establishes she did not authorize Mr. Biggs to open a join checking account with her or authorize him to assist her in selling the bond in question. Mr. Biggs claims the funds were compensation or a remunerative donation for personal services that he rendered to plaintiff.
With respect to who bears the burden of proof on plaintiff's motion for summary judgment, Louisiana Code of Civil Procedure article 966 C(2) provides, in pertinent part:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. (Emphasis added.)
Considering the pleadings, depositions, and affidavits presented in the record, plaintiff pointed out that Mr. Biggs cannot meet his burden to establish his defense; i.e. he cannot set forth strong and convincing evidence establishing that plaintiff had the donative intent to make a remunerative donation of the funds at issue. Plaintiff's deposition testimony sets forth that she never intended to: 1) open a joint account; 2) to authorize Mr. Biggs to remove the money from the account; or 3) to donate any of the funds at issue to Mr. Biggs. The affidavits of Ms. Anna K. Schindler and Ms. Anna Dio Schindler reference tasks or errands that Anna K. and *1055 Mr. Biggs performed for the benefit of plaintiff and her husband, Mr. Schindler. Arguably, these affidavits support Biggs' defense of remunerative donation. However, plaintiff's deposition establishes that Mr. Biggs was specifically paid for some of these tasks/errands and also that when these tasks were performed, Mr. Biggs was also receiving free lodging, food, and entertainment at plaintiff's expense. Thus, plaintiff's deposition establishes Mr. Biggs in fact received substantial remuneration for his services without even considering the funds at issue, i.e., the proceeds from the sale of the municipal bond. Her testimony in this respect is not contradicted.
Although the affidavits of Anna K. Schindler and Anna Dio Schindler indicate that plaintiff said she was planning to give a large sum of money to Mr. Biggs, this general testimony is not sufficient to establish donative intent by strong and convincing evidence; planning to do something and actually doing it are two different things.
Anna Dio Schindler's affidavit also states that her grandfather, Mr. Schindler, acknowledged that her grandmother (plaintiff) had given Mr. Biggs money. But the affidavit does not refer to a specific sum of money or expressly reference that he was referencing the money from the sale of the municipal bond. Plaintiff acknowledged that when Mr. Biggs was living in the same household with her, she allowed him to use her credit cards for "clothes and tools and anything else he wanted to go to Home Depot and buy." Mr. Schindler could have been referencing these expenditures when he said that Mrs. Schindler had given money to Mr. Biggs. Additionally, Mr. Schindler's understanding of plaintiffs motives alone cannot establish donative intent.
The same considerations apply to Margaret Stretzinger's affidavit, wherein she stated that she was present with Mr. Schindler and Anna Schindler on numerous occasions when conversations took place about sums of money that were given to Mr. Biggs by plaintiff. The allegations of the affidavit are very general and neither refers to the specific sum of money in question nor even generally refers to the proceeds from the sale of the municipal bond. Further, the allegations refer to the intent of persons other than that of plaintiff.
Considering all of the evidence in the record in the light most favorable to Mr. Biggs, it does not establish plaintiff's donative intent by strong and convincing evidence. Because Mr. Biggs has failed to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial to establish his defense of a remunerative or onerous donation, there is no genuine issue of material fact. Plaintiff was entitled to judgment as a matter of law based on her deposition testimony establishing the conversion, and the trial court properly granted summary judgment in her favor.
NOTES
[1] Mr. Schindler did not live in the house for the entire period of time that Mrs. Schindler, Anna, and Biggs lived together, but moved in at some point after he was diagnosed with cancer.
[2] Mr. Schindler died on March 15, 2004, and the executor of his estate, Oris R. Creighton, was substituted as intervenor in the proceedings.
[3] La. C.C. art. 2349 provides that the concurrence of the spouses is required for donation of community property to a third person. However, a spouse acting alone may make a usual or customary gift of a value commensurate with the economic position of the spouses at the time of the donation.
[4] A motion for summary judgment was also filed on the Second and Third Amending Petitions, which was denied.
[5] Anna Dio Schindler is the daughter of Anna K. Schindler and the granddaughter of Alice Rooney Schindler.
[6] Margaret Stretzinger assisted Anna K. Schindler in taking care of Mr. Schindler from December 2003 until his death.
[7] Although the court made the award of attorney's fees at the hearing on the first motion for summary judgment, it was not mentioned in the "Partial Final Judgment on Original and First Amending Peitions." In the August 8, 2005 judgment denying the second motion for summary judgment, the court noted that the judgment submitted on the first motion for summary judgment had not mentioned the award of attorney fees, so the court confirmed the award in that judgment.
[1] Mr. Biggs has conceded on appeal he cannot establish a gratuitous defense.