## <u>NOT DESIGNATED FOR PUBLICATION</u>

## STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2023 CA 1237

## DANE LYNN TAYLOR

## VERSUS

## REBECCA GODFREY TAYLOR

MAY 3 1 2024

Judgment Rendered:_____

\* \* \* \* \* \* \*

On Appeal from the 20th Judicial District Court
In and for the Parish of West Feliciana
State of Louisiana
Trial Court No. 24361

Honorable Kathryn E. Jones, Judge Presiding

\* \* \* \* \* \* \*

J. Andrew Murrell
Baton Rouge, Louisiana

Attorney for Plaintiff/Appellant
Dane Lynn Taylor

G. Bruce Kuehne
Baton Rouge, Louisiana

Attorney for Defendant/Appellee
Rebecca Godfrey Taylor

\* \* \* \* \* \* \*

**BEFORE: THERIOT, PENZATO, AND GREENE, JJ.**

**PENZATO, J.**

Dane Lynn Taylor appeals the trial court's August 10, 2023 judgment, which decreed that the net proceeds of the civil action entitled *Rebecca Faith Taylor, et al. v. Ivan Pozgaj Zagreb, etc.*, C.A. 18-674-SDD-RLB, U.S.D.C.M.D.LA. were the separate property of Rebecca Godfrey Taylor. We affirm.

## FACTS AND PROCEDURAL HISTORY

Dane and Rebecca Taylor were married in 1988. Prior to their marriage, they entered into a marriage contract providing for a separate property regime. In 2017, Rebecca was injured in an automobile accident and filed a civil action entitled *Rebecca Faith Taylor, et al. v. Ivan Pozgaj Zagreb, etc.*, C.A. 18-674-SDD-RLB, U.S.D.C.M.D.LA. The parties negotiated a settlement that resulted in net proceeds of $403,000.00. Pursuant to Rebecca's instructions, on May 6, 2021, her attorney wrote a check payable to Dane for $380,000.00 of that amount.

Dane filed a petition for divorce on June 2, 2022. Rebecca answered the petition and filed a reconventional demand seeking the return of the proceeds of the civil action, which she asserted were her separate property. The parties stipulated to a trial to determine the ownership of the proceeds.

At trial, the parties jointly introduced into evidence the deposition of Michael Hesse, the attorney who represented Rebecca and Dane in the civil action.[1] In his deposition, Mr. Hesse testified that the case was mediated, but not resolved in mediation. Rather, following mediation, the parties were able to negotiate a settlement in the amount of $625,000.00. After paying medical expenses, Mr. Hesse's firm received a check in the amount of $534,483.24. Legal fees were deducted, leaving $403,000.00 as the net to the client. Mr. Hesse testified he did not

---

[1] Mr. Hesse testified that although a consortium claim was asserted on behalf of Dane, no quantum was presented in connection with the claim and less than 1% of the effort he put into the case was related to Dane's claim. Dane was not involved in the automobile accident, and there was no evidence presented at the trial that any portion of the $380,000.00 was for a loss of consortium.

2

know what effect the receipt of the settlement funds would have on Rebecca's status for social security disability benefits and suggested to Rebecca the possibility of setting up a special needs trust. Mr. Hesse further testified Rebecca was not accepting of setting up a trust but insisted upon directing a payment of $380,000.00 to Dane. Rebecca wrote and signed instructions directing payment of $380,000.00 to Dane; $14,000.00 to Michael Godfrey; $4,000.00 for "the other thing", which Mr. Hesse understood to be the payment of an outstanding judgment against Rebecca; and "the rest to [Rebecca]," which was $5,000.00. Mr. Hesse testified Rebecca never told him the payment to Dane was a gift and he did not perceive it as such; it was his understanding Rebecca wanted the money to be in Dane's name because he was in charge of the money.

Rebecca testified she was injured in an automobile accident in 2017, as a result of which she underwent seven major surgeries in four and a half years. She applied for social security disability and began receiving payments in approximately 2019. Rebecca testified she opened an account to deposit the disability payments, and Dane told her she could not have more than $2,000.00 in the account at a time. According to Rebecca, when Mr. Hesse received the settlement funds, she instructed him to make a check payable to Dane in the amount of $380,000.00. She testified she directed the check to Dane because she thought she could not have any more than $2,000.00 in her account at any time.

Dane testified that he did not recall any conversations with Rebecca about the settlement funds prior to receiving them. According to Dane, the day Rebecca brought the check home, she handed it to him and told him it was to make up for all that she had put him through over the years. Dane testified he deposited the check from Mr. Hesse's law firm made payable to him into a savings account controlled solely by him. He further testified he transferred a portion of the $380,000.00 into an investment account in his name and he was the sole person with access to the

3

investment account. Dane testified it was his impression Rebecca intended to donate the funds to him for all the things she had done in the past.

April Taylor Magee, the couple's daughter, testified Rebecca told her she was giving the settlement proceeds to Dane for everything she had put him through. April further testified she was no longer in contact with Rebecca. Rebecca denied the conversation with April had taken place.

Following the testimony of the parties, the trial court found Rebecca did not donate the settlement funds to Dane, and Rebecca was therefore the owner of the funds. The trial court issued written reasons for its ruling on July 12, 2023, stating as follows:

> Rebecca's testimony established that she receives social security disability payments based on her residual effects from the personal injuries and asserted that she had been repeatedly told by Dane that she could only have $2000[.00] in accounts in her name at any given time to preserve her right to receive the disability payments. This Court is firmly convinced that Rebecca believed that $2000[.00] limit to be true, regardless of whether it is actually an accurate statement of the correlation between social security disability payments and a related personal injury monetary settlement. Both parties confirmed that they did not seek expert financial advice on the handling of these funds. It is much more reasonable to believe that Rebecca took Dane's advice that she could not receive a large lump sum of money and still preserve her social security disability payments, than to believe Dane's self-serving testimony that Rebecca had truly intended to donate $380,000[.00] to him due to previous unpleasantries between them, especially when a donation of those funds represented the entirety of the net proceeds of her personal injury case.
>
> This Court finds that there was no donation made by Rebecca. Her intent was not to donate to Dane, but to use him to "hide" the $380,000[.00] lump sum personal award in order to preserve her ability to continue to receive social security disability benefits. This action may have been foolhardy and based on an inaccurate perception by Rebecca of social security disability rules; however, her actual intent and subsequent actions were based upon that belief. The Court also believes that her belief relative to the $2000[.00] limit was encouraged by Dane.
>
> Therefore, because there was no actual donation made, only a transfer for purposes of sequestering the money out of Rebecca's name, the $380,000[.00] personal injury proceeds were initially, and are still, owned by Rebecca, even though the proceeds check was made payable to Dane.

On August 10, 2023, the trial court signed a judgment in accordance with its written reasons. Dane appeals, essentially contending the trial court erred by failing to find a valid donation inter vivos occurred and that the $380,000.00 is his separate property.

**LAW AND DISCUSSION**

A donation inter vivos is a contract by which a person, called the donor, gratuitously divests himself, at present and irrevocably, of the thing given in favor of another, called the donee, who accepts it. La. C.C. art. 1468. Unless otherwise provided by law, a donation inter vivos shall be made by authentic act. La. C.C. art. 1541.

One exception to the requirement of an authentic act is the donation of an incorporeal movable, which may be made by authentic act or by compliance with the requirements otherwise applicable to the transfer of that particular kind of incorporeal movable. La. C.C. art. 1550. Under Louisiana property law, a check is classified as an incorporeal movable. See La. C.C. art. 473. *Ballex v. Ballex*, 2019-1271 (La. App. 1 Cir. 7/6/20), 308 So. 3d 332, 336. The donation inter vivos of a check is effective without any formality beyond the negotiation of same. *Id.* at 337.

The donee has the burden of proving the donation and the proof must be strong and convincing. *Matherne v. Polite*, 2022-0194 (La. App. 1 Cir. 11/4/22), 355 So. 3d 664, 668. In order for a donation to be valid, there must be a divestment, accompanied by donative intent. *Schindler v. Biggs*, 2006-0649 (La. App. 1 Cir. 6/8/07), 964 So. 2d 1049, 1053. Donative intent is a question of fact that is subject to the manifest error standard of review. *Matherne*, 355 So. 3d at 668. Thus, a court of appeal may not set aside a trial court's factual finding unless it is manifestly erroneous or clearly wrong. A trial court's factual finding is manifestly erroneous/clearly wrong when, after review of the entire record, the appellate court finds that no reasonable factual basis exists for the finding and that it is manifestly

5

erroneous or clearly wrong. <u>See</u> *Stobart v. State through Dept. of Transp. and Development*, 617 So. 2d 880, 882 (La. 1993). If, in light of the record in its entirety, the trial court's findings are reasonable, then the appellate court may not reverse, even if convinced it would have weighed the evidence differently sitting as the trier of fact. *Matherne*, 355 So. 3d at 668. Where the factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, its finding can virtually never be manifestly erroneous. *Id.*

Upon review of the record in this case, we cannot say the trial court was manifestly erroneous in its factual finding that Rebecca lacked the donative intent to donate the settlement proceeds to Dane. The trial court, after hearing the testimony and considering the evidence introduced at trial, made the factual determination that Rebecca never intended to irrevocably give the settlement proceeds to Dane. Dane had the burden of proving the donative intent by strong and convincing evidence. He offered what the trial court concluded was his "self-serving testimony" that it was his impression Rebecca intended to donate the funds to him due to previous unpleasantries between them. There was conflicting testimony as to whether Rebecca and April ever discussed the decision to place the settlement funds in Dane's name. Based upon the record and Rebecca's testimony that she directed the check be made payable to Dane because he told her she could not have more than $2,000.00 in her account or she would risk losing her disability payments, we find there is a reasonable factual basis to support the trial court's finding.

## CONCLUSION

For the above reasons, the trial court's August 10, 2023 judgment is affirmed. Appeal costs are assessed to Dane Lynn Taylor.

**AFFIRMED.**

6