665 So.2d 80 (1995)
Robert M. DUPLECHIN, Jr. and Winnie S. Duplechin
v.
Mildred W. ADAMS, Executrix, and Gayle Guillory.
No. 95 CA 0480.
Court of Appeal of Louisiana, First Circuit.
November 9, 1995.
Writ Denied February 26, 1996.
*82 Ernest Hartenstine, Hammond, for Plaintiff-Appellant Robert M. Duplechin, Jr. and Winnie S. Duplechin.
Andre E. Broussard, Baton Rouge, for Defendant-Appellant Mildred W. Adams.
James Holmes, New Orleans, for Defendant-Appellee Gayle Guillory.
Before WATKINS and FOIL, JJ., and TANNER,[1] J. Pro Tem.
WATKINS, Judge.
This appeal arises from an action in redhibition in which the plaintiffs, Robert M. Duplechin and Winnie S. Duplechin, seek to rescind the sale of immovable property and alternatively seek a reduction in price from their vendor, Mildred W. Adams, as executrix of the succession of James D. Adams, and the real estate agent involved in the sale, Gayle Guillory. The trial court concluded that the home purchased by the plaintiffs had a sinking foundation that was a "hidden defect." The court found the defendants solidarily liable and awarded the plaintiffs $6,000.00 in damages, together with legal interest and costs. The plaintiffs and Mildred Adams appealed the judgment, and Ms. Guillory filed an answer to plaintiff's appeal.

FACTS
In September of 1991, Mr. Duplechin contacted Gayle Guillory about a home he saw in the Springfield, Louisiana area, which Ms. Guillory had listed with her real estate company. Mr. Duplechin met with Ms. Guillory and viewed the property which consisted of two canal front lots containing a raised home on one lot approximately 12 feet from the canal, a dock which ran the width of the property, and a boathouse. Mr. Duplechin merely looked at the property without inspecting it and decided to have his wife look at the property. Mr. and Mrs. Duplechin viewed the home together on the second visit and noticed the refrigerator door, when opened, would continue to open until it hit the wall. They questioned Ms. Guillory concerning this problem; at trial they stated that Ms. Guillory informed them that the refrigerator legs needed adjusting. Mr. Duplechin also questioned Ms. Guillory concerning the dock which had a low spot that would become covered by water at high tide. Ms. Guillory informed Mr. Duplechin that Mr. Adams, the deceased owner, told her that the depression in the dock was caused by a large boat that had been pushed onto the dock during a storm. Mr. and Mrs. Duplechin also noticed a patched crack, approximately 15 feet in length, in the concrete foundation on which the home rested. Upon inquiry, Ms. Guillory informed the Duplechins that Mr. Adams had patched or fixed the crack. The Duplechins also noticed at least one crack in the driveway prior to the sale of the home. The Duplechins also testified that Ms. Guillory stated that the property was in "very good" or "excellent" condition and that it was a good buy at $108,000.00 because its appraised value was $149,000.00. The Duplechins *83 visited the property a third time and subsequently made an offer to purchase the home. A purchase agreement was executed subject to a satisfactory inspection of the property within seven days of acceptance. Although the plaintiffs contacted someone to inspect the property, the inspection was never performed and the plaintiffs, nevertheless, executed the sale of the home.
Approximately five or six months after purchasing the home, Mr. Duplechin noticed a hairline crack developing in the patched area of the foundation. He also noticed that the crack extended up into the storage room. He did not notice the crack in the storage room prior to the sale because the room was full of items, including a lawnmower. He testified that Ms. Guillory did not want him to move any of the items because she was responsible for them. The crack in the room was approximately one and one-fourth inches wide and five feet long. Mr. Duplechin admitted that he could have seen the crack in the storage room if he had moved the lawnmower and inspected the room. The Duplechins also noticed problems with doors not opening and closing properly and with the refrigerator door continuing to sway after adjustment. The Duplechins became concerned and discussed the problem with their neighbor, Mr. Carl Miller, who pointed out that looking from his neighboring lot it was apparent the Duplechin home was sinking. Mr. Duplechin admitted that from Mr. Miller's property, it was apparent that his home was sinking. Subsequent inspections of the Duplechin home revealed an 8.5 inch differential in the foundation from the front of the home to the rear. Both of the plaintiffs' experts believed that the foundation problems resulted from a problem in the bulkhead which was causing soil subsidence. Each of the experts testified by deposition that the problems with the home and bulkhead were obvious, and because of the severity of the problems, the experts believed that most likely, they predated the sale of the home to the Duplechins. Mr. Gillis Windham, a neighbor who helped take care of the property after Mr. Adams' death, testified that he noticed many cracks in the foundation and the driveway when he went to cut the grass or to secure items when the water rose. Mr. Windham purchased the lot adjoining the Adams property from Mr. Adams shortly before Mr. Adams' death and related that he and Mr. Adams had agreed to share the cost of having dirt brought in because of the washout problems under the boardwalk. Mr. Windham further stated that he never noticed a problem with Mr. Adams' home, but he did remember that Mr. Adams had problems with his boathouse not being level.

REDHIBITION
At the time pertinent to our inquiry, Louisiana Civil Code Article 2521 provided that "[a]pparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices."[2] As used in this article "simple inspection" connotes more than a mere casual observation by the buyer. Fruge v. Hancock, 94-730 (La.App. 3d Cir. 12/07/94); 647 So.2d 488, writ denied, 95-0070 (La. 3/10/95), 650 So.2d 1181. "Simple inspection" requires an examination of the article with a view of ascertaining its soundness, but the buyer is not required to examine the inner or hidden parts of the object for the purpose of finding latent defects. Id. at 492. The proper test to be applied in this case is whether a reasonably prudent buyer acting under similar circumstances would have discovered the differential settlement problem prior to the act of sale. Sievert v. Henderson, 506 So.2d 743 (La.App. 1st Cir. 1987).
In the instant case the plaintiffs admit that they observed cracks in the foundation prior to the act of sale and that the refrigerator door would sway when opened. They also failed to observe the functioning of the doors in the home. We believe that these conditions would put a reasonable person *84 on notice of a settlement problem, creating a duty to make further investigation. See Fruge, 647 So.2d at 492, and cases cited therein. Because the settlement problem was partially apparent, and because the plaintiffs purchased the house without further investigation, we find that they are not entitled to relief for the settlement problem under the statutes and jurisprudence concerning redhibition.

NEGLIGENT MISREPRESENTATION
The trial court held Ms. Guillory solidarily liable with Ms. Adams for $6,000.00 in damages. The redhibitory action is between seller and buyer, and without such a relationship, the action cannot be maintained. Leflore v. Anderson, 537 So.2d 215 (La.App. 4th Cir.1988). Because no legal ownership is attributable to Ms. Guillory, she cannot be considered a seller for purposes of redhibition. Id. at 218.
However, a purchaser's remedy against a realtor is in damages for fraud, under LSA-C.C. Art. 1953, et seq., or for negligent misrepresentation, under LSA-C.C. Art. 2315. Rodgers v. Johnson, 557 So.2d 1136 (La.App. 2d Cir.1990).[3]
Because there is no evidence of intentional misrepresentations of material facts by Ms. Guillory, the plaintiff cannot recover under a theory of fraud.
The action for negligent misrepresentation arises ex delicto, rather than from contract. In order for a plaintiff to recover for negligent misrepresentation, there must be a legal duty on the part of the defendant to supply correct information, a breach of that duty, and damage to the plaintiff caused by the breach. Smith v. Remodeling Service, Inc., 94-598 (La.App. 5th Cir. 12/14/94); 648 So.2d 995. A real estate broker or agent owes a specific duty to communicate accurate information to the seller and the purchaser and may be held liable for negligent misrepresentation. Id. at 1000.
We agree with the trial court that Ms. Guillory "glossed over" the problems that were noticed by the plaintiffs. However, we do not believe that the plaintiffs proved that Ms. Guillory gave them inaccurate information, nor do we believe that the statements made were of such a nature that a reasonable person would rely on them without further investigation.
For these reasons, we reverse the judgment of the trial court and dismiss plaintiffs' suit. All costs of these proceedings are to be paid by the plaintiffs.
REVERSED.
NOTES
[1] Judge Thomas W. Tanner, retired, as serving as judge pro tempore by special assignment of the Louisiana Supreme Court.
[2] We note that LSA-C.C. art. 2521 was amended by La.Acts 1993, No. 841, § 1, eff. January 1, 1995, and now provides:

The seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things.
[3] Although the plaintiffs' petition does not specifically plead the torts of fraud or negligent misrepresentation, sufficient facts are alleged which would support a cause of action against Ms. Guillory for fraud and negligent misrepresentation.