691 So.2d 1245 (1997)
Gerard OSBORNE and Edna Osborne
v.
Cathryn Fricke LADNER and Terminix International Company Limited Partnership.
No. 96 CA 0863.
Court of Appeal of Louisiana, First Circuit.
February 14, 1997.
*1248 Arthur R. Cooper, Baton Rouge, for Plaintiffs/Appellees Gerard and Edna Osborne.
Ann M. Halphen, Baton Rouge, for Defendant/Appellant Sandy Pritchard.
David C. Forrester, Baton Rouge, for Defendant/Appellant Cathryn Fricke Ladner.
*1249 Walter W. Christy, Thomas P. Hubert, New Orleans, for Defendant Allied-Bruce Terminix Companies, Inc.
Before CARTER, LeBLANC and PARRO, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment, awarding the purchasers of a home a reduction in price and damages against the seller and finding the real estate agent liable in solido with the seller for a portion of the damages.

FACTS
On December 14, 1990, petitioners, Gerard and Edna Osborne, purchased a home located at 14244 Harwood Avenue in Woodland Ridge Subdivision, Baton Rouge, Louisiana, from defendant, Cathryn Fricke Ladner (Ladner), for $178,500.00. Within a few weeks of the sale, the Osbornes became aware of various leaks and termite infestation in the home. Repair estimates showed the cost to correct the damage was approximately $26,000.00.
On August 11, 1991, the Osbornes filed a suit for a reduction in the purchase price and, alternatively, for rescission of the sale and for damages for breach of contract. Named in the petition were Ladner and Allied-Bruce Terminix Companies, Inc. (Terminix).[1] The Osbornes claimed that Ladner knew of the allegedly defective condition of the home, failed to declare it to them prior to the sale, and was liable for damages as a result of her bad faith. The Osbornes alleged that Terminix breached its obligations under the termite contract and, alternatively, that Terminix had negligently inspected the premises prior to the sale.
Ladner filed an answer to the Osbornes' petition, generally denying the allegations. In her answer, Ladner contended that the alleged defects in the premises were apparent and should have been discovered by simple inspection. Ladner further alleged that the Osbornes failed to mitigate their damages by their delay in repairing the damage and by refusing to allow her to correct the damage. Ladner also filed a cross-claim against Terminix for contribution and indemnity. Ladner alleged that, at all pertinent times, Terminix held a termite treatment contract on the property and had continued to certify that the property was free of active termite infestation.
Terminix answered the claims of the Osbornes and Ladner. In its answer to the claims by the Osbornes, Terminix generally denied any liability.[2] In its answer to Ladner's cross-claim, Terminix alleged that the active termite damage was caused by an aerial infestation of subterranean termites for which it is not responsible.
On October 20, 1993, the Osbornes amended their petition, naming as a defendant Sandy Pritchard, the listing agent in the sale from Ladner to them. The Osbornes alleged that Pritchard knew of the defects in the Ladner home and misrepresented those defects to them for which she should be held solidarily liable with Ladner.
Pritchard answered the original and amended petitions, generally denying the allegations. Pritchard also filed a cross-claim against Terminix and Ladner, alleging that Terminix failed to properly inspect, detect, and exterminate and that Ladner failed to disclose the defects.
After a jury trial, the jury returned the following jury verdict interrogatories:
1. Do you find the residence at 14244 Harwood Avenue, Baton Rouge, Louisiana, contained a hidden defect that was not discoverable by simple inspection by the Osbornes?
 x YES ___ NO

*1250 2. Do you find that Sandy Pritchard negligently and knowingly misrepresented the condition of the house to the Osbornes?
 x YES ___ NO
(If you answer NO to both questions, stop now and return to the courtroom.)
3. Do you find Terminix breached its contract with the Osbornes or the Ladners and that breach caused the Osbornes damages?
 ___ YES x NO
4. Do you find that Terminix negligently failed to perform its duties in preparing the wood-destroying [insect] report and the negligence caused the Osbornes damage?
 ___ YES x NO
5. What amount of damages do you award to the Osbornes as a result of the defects?
 $36,138.94
6. If you answer "YES" to Question 3 or 4, do you find that the termite damage contributed to the defects in the residence at 14244 Harwood?
 ___ YES ___ NO
7. What amount of damages awarded in response to Question No. 5, do you find are as a result of termite damage?
 $9,165.198.
8. What amount of damages awarded in response to Question No. 5 do you find are a result of failure to disclose a material defect by Sandy Pritchard?
 $2,677.509.
9. Do you find that Cathy Ladner was a bad faith seller who concealed the defects in the house?
 x YES ___ NO
10. If your answer to No. 9 is YES, what amount, if any, do you award the Osbornes for emotional distress, mental pain and suffering?
 $5,000.00
On October 11, 1995, the trial court rendered judgment in favor of the Osbornes and against Ladner for $41,138.94, together with legal interest from date of judicial demand and costs, and $7,500.00 in attorney's fees, with legal interest from date of judgment.[3] The trial court judgment also cast Pritchard liable in solido with Ladner for $20,569.47, together with legal interest from date of judicial demand and costs.[4] The judgment also stated that Ladner and Pritchard were entitled to contribution and indemnity rights as provided by law. Judgment was rendered in favor of Terminix, dismissing all claims brought against it.[5]
From this adverse judgment, Pritchard suspensively appealed, and Ladner devolutively appealed, assigning various errors. On appeal, Ladner contends that the trial court erred in the jury instructions, in an evidentiary ruling, in the damage award for various repair items, in finding that she was a bad faith seller, and in finding that Terminix was not liable.[6] In her assignments of error, *1251 Pritchard contends that the jury erred in finding her liable for negligent misrepresentation and awarding the Osbornes $2,677.50 in damages as a result of such negligent misrepresentation.[7] Pritchard also contends that the jury erred in holding her liable in solido for damages of $20,569.47. The Osbornes answered the appeals, requesting additional attorney's fees on appeal.

EVIDENTIARY RULING

(Ladner's Assignment of Error No. 4)
Ladner contends that the trial court erred in refusing to allow the introduction of evidence and the cross-examination of Mr. Osborne relative to the issue of mitigation of damages. Ladner contends that the jury should have been permitted to receive evidence relative to her offers to repair the property in 1991 and Mr. Osborne's financial ability to repair the home and mitigate his damages. Ladner reasons that this evidence was relevant to the mitigation of damages issue.
Generally, parties should be given the opportunity to cross-examine witnesses on any relevant matter. Thibaut v. Thibaut, 607 So.2d 587, 600 (La.App. 1st Cir.1992), writs denied, 612 So.2d 37, 38, & 101 (La. 1993). The determination of the relevancy of tendered evidence and, therefore, the scope of cross-examination is within the discretion of the trial judge, whose rulings will not be disturbed in the absence of abuse of discretion. State v. Lard, 568 So.2d 629, 632 (La. App. 2nd Cir.1990). However, it is well settled that the party who contends his evidence was improperly excluded is required to make a proffer of the evidence, and if he fails to do so, he cannot contend such exclusion was erroneous. Hurts v. Woodis, 95-2166, p. 12 (La.App. 1st Cir. 6/28/96), 676 So.2d 1166; 676 So.2d 1166, 1175; Williams v. Exxon Corporation, 541 So.2d 910, 912-913 (La.App. 1st Cir.), writ denied, 542 So.2d 1379 (La. 1989).
In the instant case, Ladner failed to proffer any of the evidence she alleges was improperly excluded. As a result, she now cannot complain that such exclusion was error.

JURY INSTRUCTIONS

(Ladner's Assignments of Error Nos. 1, 2, 4, 5, 7, and 9)
Ladner contends that the trial court erred in failing to conduct a charge conference prior to giving instructions to the jury and in failing to allow objections to the jury instructions prior to the jury's retirement. Ladner further contends that the jury instructions given by the trial court were erroneous in several respects. First, the instructions given were on damages recoverable in an action for rescission rather than for damages recoverable in an action for reduction. As a result, the jury erroneously awarded damages for various repairs, such as remodeling, apparent defects, and new shingles. Second, the trial court failed to provide any instructions relative to various relevant issues, including instructions on mitigation of damages and attempts to repair, the distinction between good faith and bad faith sellers and their respective liabilities for damages, the existence of any duty owed by Terminix to the Osbornes, and solidary liability between Ladner and Pritchard.
LSA-C.C.P. art. 1793 outlines the procedure by which objections to the proposed jury instructions are to be made as follows:
A. At the close of the evidence, or at such earlier time as the court reasonably directs, a party may file written requests that the court instruct the jury on the law as set forth in the requests.
B. The court shall inform the parties of its proposed action on the written requests and shall also inform the parties of the instructions it intends to give to the jury at the close of the evidence within a reasonable time prior to their arguments to the jury.
C. A party may not assign as error the giving or the failure to give an instruction *1252 unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury.
This provision creates a mandatory rule for preserving an objection to a trial court's ruling regarding requested jury instructions. Martin v. Francis, 600 So.2d 1382, 1387 (La.App. 1st Cir.), writ denied, 606 So.2d 541 (La.1992). In order to preserve the right to appeal a trial court's refusal to give a requested instruction or its giving of an erroneous instruction, a party must not only make a timely objection, but must state the grounds of his objection. Martin v. Francis, 600 So.2d at 1387; Cole v. Celotex Corporation, 588 So.2d 376, 380 (La.App. 3rd Cir.1991), affirmed, 599 So.2d 1058 (La.1992). See Trans-Global Alloy Limited v. First National Bank of Jefferson Parish, 583 So.2d 443, 448 (La.1991). Merely making an objection, without assigning any reasons therefor, is insufficient. Martin v. Francis, 600 So.2d at 1387.
Initially, we must determine whether Ladner properly preserved her objections to the allegedly improper jury instructions. After all the parties had rested their cases, counsel for Ladner requested a bench conference during which an off-the-record colloquy took place between the trial judge and counsel. Counsel then presented their closing remarks to the jury, and the trial judge instructed the jury. Thereafter, the jury retired to deliberate. Counsel for the Osbornes then offered objections to the jury instructions, which the court ruled were not timely filed. Counsel for the Osbornes stated that he was under the assumption there would be a charge conference. The trial judge indicated that the discussion regarding jury instructions had taken place during the off-the-record colloquy prior to closing arguments. Counsel for the Osbornes and Ladner then made objections on the record to the effect that the proposed charges submitted by each were not given. In objecting to the proposed jury instructions, Ladner made a general, blanket objection to the court's failure to read her proposed jury instructions without any qualification. The transcript of the trial reveals the following statements with regard to the objections to the instructions:
Mr. Cooper: .... I wanted to object for the record regarding the instructions that I had submitted and the ones that were not given by the court for the record, the failure of the court to give them, just for the record.
Mr. Forrester: Me too. Defendant objects to any charges that it offered that were not given, whatever those were.
The Court: Let the record reflect, for clarity sake, that the court reads the instructions from the Louisiana Judicial College, and where there were instructions submitted by either party that did not conflict with and added something different to, the court did read them. (emphasis added.)
In the instant case, we find that Ladner's counsel failed to object properly to the allegedly erroneous or confusing instructions in that he failed to state the basis of his objection as required by LSA-C.C.P. art. 1793. By failing to properly object, Ladner forfeited any right to complain on appeal of the trial court's refusal to give her proposed jury charges. See Autin's Cajun Joint Venture v. Kroger Company, 93-0320, p. 7 (La. App. 1st Cir. 2/16/94); 637 So.2d 538, 543, writ denied, 94-0674 (La.4/29/94); 638 So.2d 224; Luman v. Highlands Insurance Company, 25,445, pp. 4-6 (La.App. 2nd Cir. 2/23/94); 632 So.2d 910, 913-14; Martin v. Francis, 600 So.2d at 1387.

LIABILITY AS A BAD FAITH SELLER

(Ladner's Assignment of Error No. 6)
Ladner contends that the jury erred in finding that she was in bad faith. Ladner reasons that the evidence does not support a finding that she was in bad faith and that the award of damages for mental anguish and attorney's fees is, therefore, erroneous.
Generally, the amount of damages a plaintiff can recover depends upon the type *1253 of seller involved. Under LSA-C.C. art. 2531, a good faith seller, namely, one who knew not of the vices in the thing he sold, is required to repair, remedy, or correct the vices or defects in the property which he sold. If he is unable to do so, he must restore the purchase price and reimburse the reasonable expenses occasioned by the sale and those expenses incurred for the preservation of the property. LSA-C.C. art. 2531; Landaiche v. Supreme Chevrolet, Inc., 602 So.2d 1127, 1132 (La.App. 1st Cir.1992); Sonfield v. Burleson, 543 So.2d 488, 493 (La.App. 4th Cir.), (on rehearing), writ denied, 546 So.2d 1220 (La.1989). LSA-C.C. art. 2545 provides that the seller who knows the vice of the thing which he sells and omits to declare it is answerable to the buyer in damages. Besides restitution of the price and repayment of expenses, including reasonable attorney's fees, the bad faith seller is also answerable for other damages. LSA-C.C. art. 2545. Under the proper circumstances, those damages can include non-pecuniary damages for mental anguish, aggravation, and inconvenience. Landaiche v. Supreme Chevrolet, Inc., 602 So.2d at 1132; St. Claire v. Lewis, 550 So.2d 737, 739 (La.App. 2nd Cir.1989); Ditcharo v. Stepanek, 538 So.2d 309, 314 (La.App. 5th Cir.) (on rehearing), writ denied, 541 So.2d 858 (La.1989); Leflore v. Anderson, 537 So.2d 215, 218-19 (La.App. 4th Cir.1988).
In the instant case, the evidence presented at trial supports the jury determination that Ladner was in bad faith.
At the time of Ladner's purchase of the home, the sellers had advised that the stucco had been defectively installed and that, during their ownership of the home, they had encountered a problem with a leak. However, the sellers stated that the crack in the stucco was sealed with a filler, which appeared to remedy the problem. During Ladner's ownership of the Harwood Avenue home, Ladner encountered numerous problems with leaks. Ladner's husband, Keith, testified that, between July 31, 1989, through the date of the sale of the home to the Osbornes, he performed all maintenance on the home. Keith first found a leak in the living room. However, he went onto the roof and patched a crack in the stucco, which appeared to resolve the problem. Later, Keith located other leaks in the dining room near the window, in the utility room, near the hall, and in the garage. However, Keith testified that he sealed the leaks by placing filler in the cracks in the stucco or by caulking the areas. Generally, after he filled a crack, it did not leak in that area again. Keith testified that they did not have any trouble with leaks for some time prior to the sale to the Osbornes.
Keith also admitted that he had painted over water marks on the walls where there had been leaks. He acknowledged that he did not tell the Osbornes about the leaks because he felt that the disclosure form he completed did so sufficiently. Keith also admitted to finding a rusty pan in the attic where the sellers had apparently attempted to contain water from the leaks.
Richard L. Howell, a Baton Rouge builder, testified, via deposition, that he inspected the Harwood Avenue home in April of 1991. Howell noted that water was coming into the home in several areas and in major proportions. Howell observed several stains on the walls, which had been painted over. He also observed a pan and a glass in the attic, which were concealed behind some insulation. According to Howell, the items had been there for some time.
William Watson, a general contractor, was admitted as an expert in residential construction. Watson testified that anyone residing in the Harwood Avenue home for more than a year would have been aware of the water problem.
With regard to the termite damage, Keith Ladner testified that the home was treated for termite problems in 1990, but that he never saw any swarms or other indicia of the presence of termites. However, John Edward McPherson, an entomologist, testified that he inspected the Harwood Avenue home on September 4, 1991, and located active termite infestation in two areas. According to McPherson, it would have taken a termite colony four to five years to do the kind of damage he observed. Moreover, McPherson noted that anyone living in the home for more than a year would have observed *1254 termite swarms during that period of time.
The disclosure form completed by Keith Ladner disclosed that the property had had termites in 1989. The form also indicated that the roof did not leak. However, Ladner qualified that response by noting that the stucco had cracked and leaked, but that the problem had been corrected.
Based on the above, we cannot say that the jury erred in finding that Ladner knew or should have known of the defects in the premises caused by the water damage and termite infestation and failed to declare it to the Osbornes. As such, the jury's determination that Ladner was in bad faith and is liable for damages as a bad faith seller is not manifestly erroneous.

LIABILITY OF TERMINIX

(Ladner's Assignment of Error No. 8)
Ladner contends that the jury erred in failing to find Terminix liable for the cost of the termite repairs to the home. Ladner reasons that Terminix issued termite certificates in connection with the sales of the Harwood Avenue home to her and to the Osbornes. The Harwood Avenue home was under contract with Terminix during her ownership of the home, and Terminix owed her a duty to faithfully fulfill its obligations under such contract. Alternatively, Ladner argues that Terminix owed a duty to use reasonable care in inspecting the home and issuing the termite certificates and breached its duty in the instant case. As a result, Ladner contends Terminix is liable for the cost of the termite damage.

A. Contract claims.
In interpreting contracts, we are guided by the general rules contained in articles 2045-2057 of the Louisiana Civil Code. Subject to the limits imposed by law, parties are free to contract as they choose. Zeigler v. Pleasant Manor Nursing Home, 600 So.2d 819, 822 (La.App. 3rd Cir.1992). The cardinal rule is set forth in LSA-C.C. art. 2045, which states that the interpretation of a contract is the determination of the common intent of the parties. Amend v. McCabe, 95-0316, p. 7 (La.12/1/95); 664 So.2d 1183, 1187; McCrory v. Terminix Service Co., Inc., 609 So.2d 883, 885 (La.App. 4th Cir.1992). To determine the parties' intent, courts must first look to the words and provisions of the contract. When they are clear and explicit, no further interpretation may be made in search of the parties' intent. LSA-C.C. art.2046; Amend v. McCabe, 664 So.2d at 1187; McCrory v. Terminix Service Co., Inc., 609 So.2d at 885. Stated differently, when the language of the contract is unambiguous, the letter of the clause should not be disregarded under the pretext of pursuing its spirit. LSA-C.C. art.2046, Revision Comment (b).
To determine the meaning of words used in a contract, courts should give them their generally prevailing meaning. However, words of art and technical terms must be given their technical meaning when the contract involves a technical matter. LSA-C.C. art.2047; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). When the terms of a contract are susceptible of more than one interpretation, it is ambiguous, and parol evidence may be used to show the true intent of the parties. LSA-C.C. art.2048; McCrory v. Terminix Service Co., Inc., 609 So.2d at 885; Carter v. BRMAP, 591 So.2d 1184, 1187 (La. App. 1st Cir.1991).
Whether a contract is ambiguous or not is a question of law. Carter v. BRMAP, 591 So.2d at 1188; Borden, Inc. v. Gulf States Utilities Company, 543 So.2d 924, 928 (La.App. 1st Cir.), writ denied, 545 So.2d 1041 (La.1989). Appellate review of questions of law is simply whether the trial court's interpretive decision is legally correct. O'Niell v. Louisiana Power & Light Company, 558 So.2d 1235, 1238 (La.App. 1st Cir. 1990).
Paragraph 2 of the terms and conditions of the contract between Ladner and Terminix provided as follows:
Water leakage in treated areas, in interior areas or through the roof or exterior walls of the identified property may destroy the effectiveness of Terminix's treatment and is conducive to new infestation. *1255 Purchaser is responsible for making timely repairs as are necessary to stop water leakage. Upon completion of repairs by Purchaser, Terminix will provide additional treatment to control infestation at Purchaser's expense. Purchaser's failure to make timely repairs or purchase the additional necessary treatment will terminate this agreement automatically without further notice.
The terms of this liability provision, taken as a whole, are not susceptible to more than one interpretation. The rule of strict construction does not authorize perversion of a contract's language or the creation of ambiguity where none exists. Ransom v. Camcraft, Inc., 580 So.2d 1073, 1077 (La.App. 4th Cir.1991). The contract's provisions clearly and explicitly state that the purchaser's failure to make timely repairs for water leakage in treated areas will terminate the agreement.
In the instant case, the facts reveal that water leaks were a problem in the Ladner home. Keith Ladner testified that he had repaired the leaks and that it had been some time since they encountered leaks. However, the other evidence presented reveals that the leaks continued and had not been resolved timely by Ladner. As such, we find that the jury did not err in refusing to find that Terminix breached any contractual obligation to Ladner.

B. Tort claims.
A pest control operator owes the purchaser of a home a duty of reasonable care, competence, or skill in ascertaining and/or communicating facts in a termite inspection report, even though the purchasers are not a party to the contract and have no direct or indirect contact with the inspector. Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007, 1016 (La.1993); Brouillette v. Ducote, 93-990, pp. 5-6 (La.App. 3rd Cir. 3/2/94); 634 So.2d 1243, 1247; Doskey v. Hebert, 93-1564, p. 14 (La.App. 4th Cir. 9/29/94); 645 So.2d 674, 681-82.
In the instant case, prior to the sale to the Osbornes, Terminix performed an inspection on the home and issued a wood destroying insect report on December 3, 1990. In the report, Terminix noted that there were areas of the property that were obstructed and inaccessible, but that no visible evidence of an active infestation from wood destroying insects was found. The report also noted that the property had first been treated on July 28, 1989, at which time termites had been discovered, but no infestation had been observed at the time of this report. However, on December 13, 1990, Terminix mailed Ladner a second report. In the second report, Terminix indicated that active termite infestation had indeed been located on the property.[8]
After the sale of the property from Ladner to the Osbornes, on March 22, 1991, Terminix treated an overhead beam, which showed existing moisture problems and damage. On September 10, 1991, Terminix discovered an area of wood rot and an active suspended colony of termites in the rear of the Harwood Avenue home. On February 7, 1992, Terminix located several exit holes in the sheet rock in the bedroom, which it attributed to a leak in the roof. On October 28, 1992, several tunnels were discovered near the garage and visible damage near the rear patio was found. A re-service work order, dated April 29, 1993, showed that Terminix had drilled through brick to treat a void between a planter box and the slab. On June 3, 1993, Terminix again treated the Harwood Avenue home by removing brick siding to expose stucco siding and drilling through the brick base to treat the slab. Later that month, Terminix again treated the Harwood Avenue home by drilling in the area of the French doors and applying the treatment chemicals. On October 28, 1993, additional termites were discovered in the main house and garage.
Moreover, the evidence presented at trial showed that there had been active termite infestation for four to five years. John Edward *1256 McPherson, an entomologist, testified that, unless it was an exceptionally large colony, it would have taken termites four to five years to do the type of damage that was done to the Harwood Avenue home.
Gerard Osborne testified that he was concerned about the disclosure of prior termite activity, but that he had been assured that the activity was old termite activity and not active termites. Moreover, Osborne testified that he was not advised that Terminix had discovered active termites ten to eleven days prior to the closing. The Osbornes relied on the report issued by Terminix on December 3, 1990, that indicated no presence of termite activity.
Based on the above, we find that the initial report issued on December 3, 1990, was inaccurate and misleading. Clearly, Terminix fell below the standard of care owed to the Osbornes by failing to disclose its discovery of termite activity, and this breach was a cause-in-fact of the structural damages to the home. The exhibits and testimony at trial reveal that costs directly attributable to the termite damage totaled $9,165.19; the effect of Terminix's liability for this damage is discussed below.

C. Solidary liability and the effect of the release of Terminix
LSA-C.C. art. 1797 provides that "[a]n obligation may be solidary though it derives from a different source for each obligor." James v. Formosa Plastics Corporation of Louisiana, 95-1794, p. 3 (La.App. 1st Cir. 4/4/96); 672 So.2d 319, 321; Stonecipher v. Mitchell, 26,575, p. 5 (La.App. 2nd Cir. 5/10/95); 655 So.2d 1381, 1386.
In Hoefly v. Government Employees Insurance Company, 418 So.2d 575 (La.1982), the Louisiana Supreme Court provided the three requisites to find solidary obligations: first, each obligor is obliged to the same thing; second, each obligor may be compelled for the whole payment, and finally, payment by one exonerates the other from its obligation to the creditor. See also LSA-C.C. art. 1794. Differing sources of liability do not preclude an in solido obligation; the obligation may be in solido even though the obligations of the obligors arise from separate acts or by differing reasons. It is the co-extensiveness of the obligations for the same debt, not the source of liability, that determines the solidarity of the obligation. James v. Formosa Plastics Corporation of Louisiana, 672 So.2d at 322; Stonecipher v. Mitchell, 655 So.2d at 1386.
In the instant case, Terminix is liable to the Osbornes for the termite damage for the breach of its duty to properly report the termite infestation to them. Ladner's liability to the Osbornes for the termite damage arises out of her obligations as a seller. Accordingly, because each obligor is liable to the Osbornes for the entirety of the termite damage, they are solidarily liable for those damages.
LSA-C.C. art. 1803 sets forth a remedy for a solidary obligor who may be disadvantaged as a result of an obligee's decision to settle with another solidary obligor. LSA-C.C. art. 1803 provides, in pertinent part, that:
Remission of debt by the obligee in favor of one obligor, or a transaction or compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that obligor.
According to this article, the solidary obligor who has not settled with the obligee is entitled to have the obligee's recovery reduced by the amount of the released obligor's portion of fault or liability. LSA-C.C. art. 1803, Revision Comment (b). When an obligee settles with and releases a solidary obligor, the remaining solidary obligors are deprived of their right to contribution against the solidary obligor who has been released. Mott v. Brister's Thunder Karts, Inc., 95-410, p. 3 (La.App. 3rd Cir. 10/4/95); 663 So.2d 233, 235.
In the instant case, Terminix was a named defendant in the Osbornes' action, and Ladner filed a third-party demand against Terminix for the termite damage to the Harwood Avenue home, in the event she was held liable to the Osbornes. When the Osbornes released Terminix, any right Ladner may have had against Terminix in contribution was lost. Pursuant to LSA-C.C. art. *1257 1803, Ladner is entitled to have the Osbornes' damages reduced.
Because the jury did not find Terminix liable, it did not apportion fault.[9] However, having found that the jury erred in failing to hold Terminix liable on the third-party demand, we must apportion fault between Terminix and Ladner.
LSA-C.C. art. 1804 addresses the apportionment of liability between solidary obligors and provides, in pertinent part, as follows:
Among solidary obligors, each is liable for his virile portion. If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary. If the obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obligor.
A solidary obligor who has rendered the whole performance, though subrogated to the right of the obligee, may claim from the other obligors no more than the virile portion of each.
In the instant case, Ladner's obligations arose out of a contract or quasi-contract, and the duty of Terminix arose from an offense or quasi-offense. We have reviewed the entire record in this matter and find liability should be apportioned equally between Ladner and Terminix. Therefore, the cost of repairing the termite damage of $9,165.19 should be borne equally by Ladner and Terminix. Accordingly, we find that the judgment in favor of the Osbornes and against Ladner should be reduced by $4,582.59.

NEGLIGENT MISREPRESENTATION

(Pritchard's Assignment of Error No. 1)
Pritchard contends that the jury erred in finding her liable to the Osbornes for negligent misrepresentation. Pritchard contends that she had no knowledge of any defect other than those which the Ladners disclosed to her, which she communicated to Pat Wattam, the real estate agent for the Osbornes.
A purchaser's remedy against a real estate broker is limited to damages for fraud under LSA-C.C. art.1953 et seq. or for negligent misrepresentation under LSA-C.C. art. 2315. Duplechin v. Adams, 95-0480, p. 5 (La.App. 1st Cir. 11/9/95); 665 So.2d 80, 84, writ denied, 95-2918 (La. 2/2/96); 666 So.2d 1104; Reeves v. Weber, 509 So.2d 158, 160 (La.App. 1st Cir.1987); Rodgers v. Johnson, 557 So.2d 1136, 1138 (La.App. 2nd Cir.1990). The action for negligent misrepresentation arises ex delicto, rather than from contract. In order for a plaintiff to recover for negligent misrepresentation, there must be a legal duty on the part of the defendant to supply correct information, a breach of that duty, and damage to the plaintiff caused by the breach. Duplechin v. Adams, 665 So.2d at 84; Smith v. Remodeling Service, Inc., 94-589, p. 7 (La.App. 5th Cir. 12/14/94); 648 So.2d 995, 999. A real estate broker or agent owes a specific duty to communicate accurate information to the seller and the purchaser and may be held liable for negligent misrepresentation. Duplechin v. Adams, 665 So.2d at 84; Smith v. Remodeling Service, Inc., 648 So.2d at 1000; Josephs v. Austin, 420 So.2d 1181, 1185 (La.App. 5th Cir.1982), writ denied, 427 So.2d 870 (La. 1983). However, the duty to disclose any material defects extends only to those defects of which the broker or agent is aware. Reeves v. Weber, 509 So.2d at 160.
In the instant case the evidence revealed that, during Ladner's ownership of the home, she encountered problems with leaks, which her husband, Keith, attributed to the cracks in the stucco. According to Keith, on those occasions when he discovered the leaks, he advised Pritchard. In fact, Keith testified that, during the eighteen months his wife owned the home, he telephoned Pritchard several times. Keith acknowledged that any problems they had with leaking occurred within the first six months of their ownership and that it had been more *1258 than one year since he had reported any leaks to Pritchard. Keith also testified that he provided the information to place on the disclosure sheet, advising the Osbornes that the roof did not leak and that cracks in the stucco caused leaks, but that those areas had been repaired.
Sandy Pritchard testified that, at the time of the sale, she had no knowledge of the condition of the interior structural problems caused by the termite damage or leaking. Pritchard testified that she had been a social guest in the Ladner home on numerous occasions and had neither seen a leak nor did she see the type of damage giving rise to this suit. According to Pritchard, during the listing period, she observed nothing that indicated any leaking or the kind of problems with water or termite damages which ultimately developed with the home. Pritchard recalled several conversations with Keith about leaks during Ladner's ownership of the home. However, Keith always represented that the leaks had been corrected. In completing the disclosure form, Pritchard met with both Ladner and Keith. The information supplied to her revealed that the roof was not a problem and did not leak and that the stucco had leaked, but that it had been more than a year since the Ladners had any such leaks.
Patricia Wattam, the real estate agent who represented the Osbornes in the purchase of the Harwood Avenue home, testified that she observed water marks on a wall when she showed the home to the Osbornes. Wattam testified that Pritchard advised her that there had been prior leaks in the home, but that the problems had been corrected.
Based on the above, we conclude that the jury erred in finding that Pritchard breached her duty to supply the correct information to the Osbornes. The uncontradicted testimony presented at trial revealed that Pritchard was provided with information about leaks in the stucco by Ladner or Keith, which she, in turn, disclosed to Wattam and the Osbornes. There is no evidence that Pritchard knew more than what she was told by Ladner and Keith. Accordingly, that portion of the judgment casting Pritchard liable is reversed.

DAMAGE AWARD

(Ladner's Assignment of Error No. 3)
Ladner contends that the jury erred in its damage award. Ladner reasons that numerous items of damage were improperly awarded because they were for discretionary remodeling repairs, for apparent defects, or for items negotiated prior to closing.
As noted earlier, besides restitution of the price and repayment of expenses, including reasonable attorney's fees, the bad faith seller is answerable also for other damages. LSA-C.C. art. 2545. Under the proper circumstances, those damages can include non-pecuniary damages for mental anguish, aggravation, and inconvenience. Landaiche v. Supreme Chevrolet, Inc., 602 So.2d at 1132; St. Claire v. Lewis, 550 So.2d at 739. Moreover, the proper measure of damages in an action for reduction is the difference between the actual sales price and the price a reasonable buyer and seller would have agreed upon, if they had known of the defect. Lusk v. Durham Pontiac-Cadillac, Inc., 459 So.2d 1277, 1280 (La.App. 1st Cir.1984). However, the cost of repairing a redhibitory defect is a principal consideration in determining the extent to which the purchase price should be reduced based on such defects. Besse v. Blossman, 521 So.2d 570, 573 (La.App. 1st Cir.1988). The burden of establishing the amount of any reduction in the purchase price to which the buyer is entitled is upon the buyer. Sanders v. Sanders Tractor Company, Inc., 480 So.2d 913, 917 (La. App. 2nd Cir.1985). The trier of fact has much discretion to assess the amount of recovery in reduction cases, and its award will not be modified in the absence of clear abuse of that discretion. Leonard v. Daigle Pontiac-Buick-GMC, Inc., 413 So.2d 577, 580 (La. App. 1st Cir.1982).
In the instant case, Richard L. Howell, a Baton Rouge builder, testified that, in early 1991, he inspected the Harwood Avenue home for the Osbornes and provided an estimate to repair the water damage and correct the deficiencies in the property. Howell's bid was for $26,650.00. On May 20, 1993, Bill Watson, another Baton Rouge *1259 contractor, prepared an estimate to repair the water damage and correct the leaking problems. Watson's estimate totaled $26,192.10. Watson also noted that his estimate only covered visible damages and that additional expenditures may be necessary if, during the process of making the repairs, hidden damage was discovered. Watson ultimately performed the repair work. The October 22, 1993, invoice reveals the original contract price of $26,192.10, plus an additional $1,000.00 for contract price changes and $2,807.90 in work attributable to hidden damage. The remainder of the $36,618.94 total damage award was attributable to termite damages.
We have reviewed the documentary evidence and testimony relative to the repairs made and the reasonableness of those expenditures and cannot say that the jury abused its discretion in making its damage award.
Because of our resolution of these issues, we find it unnecessary to address the other issues raised by Ladner and Pritchard.

ANSWER TO APPEAL
In the judgment, based upon the jury determination that Ladner was a bad faith seller, the trial court awarded the Osbornes $7,500.00 for attorney's fees against Ladner. Attorney's fees were not awarded against any other defendant. The Osbornes answered the appeal, requesting additional attorney's fees for opposing Ladner's appeal.
Generally, an increase in attorney's fees should be awarded when a party who was awarded attorney's fees in the trial court is forced to and successfully defends an appeal. Meche v. Harvey, Inc., 95-848, p. 7 (La.App. 3rd Cir. 12/6/95); 664 So.2d 855, 859, writ denied, 96-0084 (La.3/8/96); 669 So.2d 402.
With regard to those portions of the judgment in favor of the Osbornes and against Ladner, on appeal, we affirmed the majority of the trial court judgment. However, we reduced the judgment in favor of the Osbornes and against Ladner to reflect the impairment of Ladner's right of contribution against Terminix. Therefore, we find that additional attorney's fees are not warranted on appeal.

CONCLUSION
For the above reasons, the judgment of the trial court in favor of the Osbornes and against Pritchard is reversed. That portion of the trial court judgment in favor of the Osbornes and against Ladner is reduced from $41,138.94 to $36,556.35. In all other respects, the judgment of the trial court is affirmed. Costs are assessed against Ladner and the Osbornes, equally.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] Terminix was initially named in the litigation as Terminex International Company Limited Partnership. By supplemental and amending petition, filed October 10, 1991, Allied-Bruce Terminex Companies, Inc. was substituted as a defendant in place of Terminex International Company Limited Partnership.
[2] On October 26, 1994, pursuant to a motion and order of dismissal, the Osbornes dismissed their claims against Terminix, with prejudice.
[3] We note that the jury verdict form did not include an interrogatory regarding attorney's fees and that the judgment awarded the Osbornes attorney's fees of $7,500.00, in addition to the $5,000.00 for emotional distress and mental pain and suffering. The propriety of the award of attorney's fees is not an issue in this appeal.
[4] The judgment is silent as to the jury's verdict in favor of the Osbornes and against Pritchard for $2,677.50.
[5] Thereafter, Ladner filed a motion for new trial, contending that the judgment was contrary to the law and the evidence in the following respects: the trial court failed to give its jury instructions relative to mitigation of damages; some of the damages awarded to the Osbornes were for apparent defects; Ladner was not in bad faith, and Pritchard should have been held solidarily liable for the entirety of the judgment rendered against Ladner. Pritchard filed a motion to dismiss Ladner's motions for new trial, which was signed by the trial judge on December 12, 1995. These matters are not before us on appeal.
[6] Ladner does not contend on appeal that the trial court erred in finding that the home contained redhibitory defects or that the Osbornes were entitled to a reduction in the purchase price of the home. Rather, Ladner's appeal addresses the amount of the reduction and damages awarded to the Osbornes.
[7] See Footnote 4.
[8] According to the testimony of Joe Ed Arceneaux, the Terminix district sales manager for south Louisiana, a similar event occurred in the sale to Ladner. Terminix issued an initial report on July 24, 1989, noting that no active termite infestation had been observed. However, four days later, Terminix sent a second report noting the presence of active termite infestation.
[9] We note that the parties did not object to the verdict form, which failed to provide the jury with an opportunity to apportion fault between Ladner and Terminix. As such, any objections to the failure to include such an interrogatory is not before us on appeal. See Wiggins v. Exxon Corporation, 590 So.2d 1209, 1210 (La.App. 1st Cir. 1991), writ denied, 595 So.2d 660 (La.1992).