STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 06-1245


JERRY A. WADDLES

VERSUS

DANNY R. LACOUR, SR., ET AL.


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 206,301
HONORABLE F. RAE DONALDSON SWENT, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Oswald A. Decuir, Glenn B. Gremillion, and Billy Howard Ezell, Judges.


**AFFIRMED AS AMENDED.**

**Fred Andrew Pharis**
**Pharis Law Office**
**831 DeSoto Street**
**Alexandria, LA 71301**
**(318) 445-8266**
**Counsel for Plaintiff/Appellee:**
**Jerry A. Waddles**

**Michael Paul Bienvenu**
**Seale, Smith, Zuber & Barnette**
**8550 United Plaza Blvd, Suite 200**
**Baton Rouge, LA 70809**
**(225) 924-1600**
**Counsel for Defendants/Appellants:**
**Chicago Insurance Company**
**Fern Posey**

**EZELL, JUDGE**.

Fern Posey and her insurer, Chicago Insurance Company, incorrectly named in the plaintiff's petition as, Interstate Fire and Casualty Insurance Company, appeal a trial court judgment finding that Ms. Posey violated her duty as a real estate agent. The trial court found that Ms. Posey failed to inform Jerry Waddles that she was told the house he intended to purchase had once been a mobile home. The allocation of fault and the amount of damages awarded were also appealed.

## FACTS

On September 5, 2000, Joyce Pruitt got a call from Rosalyn and Danny LaCour about listing their home and ten acres at 176 Dewitt Lane in the Alexandria area for sale. Ms. Pruitt became sick, so Fern Posey became a co-agent on the listing.

After living in Denver, Colorado for the last thirty years, Jerry Waddles was in the area looking for a home where he could retire. A friend showed him the LaCours' home. He called Ms. Posey that day, and they went to look at the house that night. A dual agency agreement was signed. An agreement to buy and sell was signed that same evening on February 5, 2001, because Mr. Waddles was leaving town the next day. A purchase price of $170,000 was agreed to.

Mr. Waddles testified that after moving into the home he received two phone calls from neighbors informing him that his house had once been a mobile home. Mr. Waddles stated that he initially ignored these calls until he received a call from a third person telling him that the home used to be a mobile home. He then called Ms. Posey to inquire about the situation. At trial, Ms. Posey admitted that she had received three phone calls asking whether the home used to be a mobile home. She questioned the LaCours about the situation who told her that there was a mobile home there when they bought the land but it was now gone.

1

Mr. Waddles hired an inspector, Kenneth Andrews, who found that the house was a combination of a site-built home and a mobile home. Mr. Andrews estimated that about twenty-five percent of the home consisted of mobile home components. The thicker part of the home was the existing mobile home with added standard stud walls, and a frame added around the entire outer part of it. He testified that the second wall hides all the exterior of the trailer. Mr. Andrews observed that the steel frame of the mobile home could be seen underneath the present house.

Mr. Waddles filed suit against Ms. Posey and her insurer, in addition to Ms. Pruitt and the LaCours. After the LaCours filed for bankruptcy, they were dismissed from the suit. The case proceeded to trial on February 7 and February 10, 2006, against the remaining Defendants alleging that they had falsely marketed the home as a custom home and failed to disclose the nature of the home as a mobile home.

The trial court found that Ms. Pruitt and Ms. Posey had a duty to inform Mr. Waddles about the three phone calls as his agents so that he could have been given the opportunity to negotiate more. The court then reduced the purchase price of the mobile home by twenty-five percent. It also awarded $10,000.00 in mental anguish damages. Fault was allocated two-thirds to Ms. Posey and one-third to Ms. Pruitt. Ms. Posey and her insurer appealed the judgment. [1] They assert several errors by the trial court. First they claim the trial court erred in finding that Ms. Posey breached any duty owed to Mr. Waddles and in imposing liability on her. Ms. Posey and her insurer also claim the trial court erred in finding that the breach of any duty owed by Ms. Posey caused Mr. Waddles any damage. Additionally, they allege that the trial court erred in not assessing any fault to Mr. Waddles, the LaCours, and Mr. James Vance, who performed an appraisal of the home for the sale. Finally, Ms. Posey and

---

[1] We note that Ms. Pruitt did not appeal the judgment.

2

her insurer argue that the award of $10,000 for mental anguish damages is excessive.

## DUTY

Louisiana Revised Statutes 9:3897 provides for a dual agency. Section A provides that a person can act as a dual agent with the informed consent of all the clients. Section A then lists the duties of a dual agent which should be provided in the dual agency disclosure form as follows:

(1) Treat all clients honestly.

(2) Provide information about the property to the buyer or tenant.

(3) Disclose all latent material defects in the property that are known to the licensee.

(4) Disclose financial qualification of the buyer or tenant to the seller or landlord.

(5) Explain real estate terms.

(6) Help the buyer or tenant to arrange for property inspections.

(7) Explain closing costs and procedures.

(8) Help the buyer compare financing alternatives.

(9) Provide information about comparable properties that have sold so both clients may make educated decisions on what price to accept or offer.

In finding Ms. Posey breached a duty to Mr. Waddles, the trial court in written reasons for judgment, stated:

The two realtors clearly gave preference to the sellers, as, apparently, Ms. Pruitt believed she should. At trial, Ms. Pruitt testified she and Posey did not tell Waddles about the calls because "anything the seller says must be kept private unless the seller specifies that it may be disclosed." The court notes, first, that neither realtor testified that they asked for permission from the LaCours to disclose the calls to Waddles; but, Pruitt's position simply is not a correct understanding of the statute. In Paragraph B, the statute does provide there are three things that cannot be disclosed without permission from either client, the seller or buyer. The situations mentioned in Paragraph B are not present in this case but, in any event, they are not situational preferences for the seller. These provisions apply equally to both buyer and seller. With regard to

3

the information about the calls, Pruitt and Posey did not have any greater duty toward the seller than they did to the buyer.

The obvious purpose of the statute is to increase honesty in real estate transactions through a duty imposed on the real estate agents. Pruitt and Posey expressed concern with their duty to the seller and with maintaining the sale. At no time did they express any concern with the buyer or any understanding of the dual agency agreement. Paragraph D.[sic] actually would have protected Posey and Pruitt from any liability for the disclosure to the buyer.

Posey and Pruitt seem to think they are entitled to rely on the denials of the LaCours, who filed for bankruptcy and are long gone. With one call, the court might agree; with two, it's doubtful; but, three? Absolutely not. Any reasonable person would have become sufficiently alerted to understand that the dual agency obligation required a disclosure. Not because they believed or disbelieved the LaCours and not because they knew the incorporation of the trailer was true or untrue; the disclosure was required because the two realtors had a fiduciary obligation to the buyer and seller. If it was something they had to keep asking the seller about, it was something they needed to tell the buyer. It is not up to the realtor to choose who to believe. People lie. The LaCours must have been really good at it. When the realtor chooses to believe a dishonest seller and fails to disclose, he will be liable for making a choice that was not his to make.

The trial court, relying on La.RS. 9:3897(A), specifically found that Ms. Posey and Ms. Pruitt breached the obligation to reveal information about the property to Mr. Waddles and the obligation to assist in obtaining an inspection. The trial court found that the property had been marketed by Ms. Posey and Ms. Pruitt as a "custom built" home and the incorporation of trailer parts into the structure constitutes a misrepresentation.

Ms. Posey and her insurer argue that the trial court erred in finding that she misrepresented anything or failed to disclose information about the property. While Ms. Posey and her insurer agree that the statute imposes an obligation to assist with inspections, they claim it does not impose a duty to have the property inspected when the buyer does not want an inspection. They argue the trial court erred in finding that Ms. Posey should have pursued getting a home inspection.

4

A purchaser's remedy against a real estate broker is limited to damages for fraud under LSA-C.C. art.1953 *et seq*. or for negligent misrepresentation under LSA-C.C. art. 2315. *Duplechin v. Adams*, 95-0480, p. 5 (La.App. 1st Cir. 11/9/95); 665 So.2d 80, 84, *writ denied*, 95-2918 (La. 2/2/96); 666 So.2d 1104; *Reeves v. Weber*, 509 So.2d 158, 160 (La.App. 1st Cir.1987); *Rodgers v. Johnson*, 557 So.2d 1136, 1138 (La.App. 2nd Cir.1990). The action for negligent misrepresentation arises *ex delicto*, rather than from contract. In order for a plaintiff to recover for negligent misrepresentation, there must be a legal duty on the part of the defendant to supply correct information, a breach of that duty, and damage to the plaintiff caused by the breach. *Duplechin v. Adams*, 665 So.2d at 84; *Smith v. Remodeling Service, Inc.*, 94-589, p. 7 (La.App. 5th Cir. 12/14/94); 648 So.2d 995, 999. A real estate broker or agent owes a specific duty to communicate accurate information to the seller and the purchaser and may be held liable for negligent misrepresentation. *Duplechin v. Adams*, 665 So.2d at 84; *Smith v. Remodeling Service, Inc.*, 648 So.2d at 1000; *Josephs v. Austin*, 420 So.2d 1181, 1185 (La.App. 5th Cir.1982), *writ denied*, 427 So.2d 870 (La.1983). However, the duty to disclose any material defects extends only to those defects of which the broker or agent is aware. *Reeves v. Weber*, 509 So.2d at 160.

*Osborne v. Ladner*, 96-863, p. 16 (La.App. 1 Cir. 2/14/97), 691 So.2d 1245, 1257.

"Whether a defendant has breached a duty is a question of fact." *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217, p. 11 (La. 4/3/02), 816 So.2d 270, 278. Factual determinations of the trial court may not be reversed in the absence of manifest error or unless it is clearly wrong. *Id*.

At trial Ms. Posey admitted that she had gotten three calls from neighbors inquiring whether the home used to be a mobile home. Each time she received a call, she would tell Mrs. LaCour who replied that there was a mobile home there when they bought the land but it was gone. She admitted it did raise her suspicions but she believed Mrs. LaCour. She testified she did not tell Mr. Waddles about the three calls because she was satisfied with Mrs. LaCour's repsonse.

Regarding an inspection of the house, Ms. Posey did state that she recommended that Mr. Waddles have the house inspected. Mr. Waddles admitted that he knew he had the right to have the home inspected but hired an inspector only once

5

in the previous five to six homes that he purchased. Mr. Waddles never stated that he planned on having the home inspected prior to purchasing it.

We find no manifest error in the trial court's conclusion that Ms. Posey had a duty to inform Mr. Waddles about the three calls. We agree with the trial court that the fact that the home was constructed around a preexisting mobile home is information that a buyer should be made aware of pursuant La.R.S. 9:3897(A)(2). We acknowledge that sometimes agents will get calls about property for sale and are not obligated to disclose a simple anonymous call. However, in this case there were three calls informing Mrs. Posey that the home for sale used to be a mobile home. As an agent for Mr. Waddles also, this issue could have been raised that evening while at the LaCours' home so that Mr. Waddles could decide whether to ask the LaCours about the situation. If the LaCours disclosed that there were mobile home components in the home, Mr. Waddles could then decide whether he still wanted to purchase the home, have it inspected, or negotiate for a lower price. If the LaCours failed to disclose the information, at least Ms. Posey would have fulfilled her obligation to Mr. Waddles, who could then decide for himself what to do with the information. To fail to disclose this information was a negligent misrepresentation.

While we agree with the trial court that Ms. Posey breached a duty to Mr. Waddles to supply him with important information about the home, we do not agree with the trial court that Ms. Posey should have set up an inspection of the home. Although La.R.S. 9:3897(A)(6) does require the agent to help the buyer arrange for a property inspection, it does not require the agent to arrange the property inspection when the client does not want one. Mr. Waddles admitted that he was aware he could have the property inspected, but he has never done so, except on one occasion. He did not request that Ms. Posey help him set up an inspection, so we find that she had

6

no duty to arrange an inspection.

## DAMAGES

Reduction in Purchase Price

In awarding damages, the trial court decided to reduce the purchase price by twenty-five percent, which is what the house inspector testified was the percentage of mobile home parts the house contained. Ms. Posey argues that the trial court erred in finding that the breach of any duty owed by her caused Mr. Waddles any damage.

"Plaintiff must show damages as a result of his justifiable reliance on the defendant's misrepresentations." *Hughes v. Goodreau*, 01-2107, p. 19 (La.App. 1 Cir. 12/31/02), 836 So.2d 649, 663, *writ denied*, 03-232 (La. 4/21/03), 841 So.2d 793. "[T]he proper measure of damages in an action for reduction is the difference between the actual sales price and the price a reasonable buyer and seller would have agreed upon, if they had known of the defect." *Osborne*, 691 So.2d at 1258. "The burden of establishing the amount of any reduction in the purchase price to which the buyer is entitled is upon the buyer." *Id*. The trial court is afforded much discretion in its award of damages, and the appellate court should rarely disturb an award of damages. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994).

James Vance, a real estate appraiser, appraised the home for the original sale. He concluded that the home had a market value of $176,000 as of March 6, 2001. This value included $20,000 for the ten acres of land sold with the home. He explained that he had no idea that the home had mobile home parts in it at the time of the 2001 appraisal. Mr. Vance stated that had he known of the mobile home components, he would have depreciated the value of the house by forty-four percent, as the amount attributed to the mobile home components. At trial he admitted that

7

the forty-four percent as the percentage of mobile home components was a value given to him by Mr. Waddles. This method results in a value to the home of $123,000.

On January 12, 2006, Mr. Vance performed two different appraisals of the home for trial purposes. The values attributed to the home were $140,000 and $200,000. To obtain the $140,000 value, Mr. Vance used mobile home sales adjusting the values upward to reflect that the quality of the construction of the home was better than comparative properties, which were simple mobile homes. The $200,000 value was obtained using contemporary home sales and adjusting the value downward to reflect that the subject property contained forty to fifty percent mobile home components.

Obviously, the trial court rejected the testimony of Mr. Vance concerning his determination of the percentage of mobile home components. It agreed with the inspector's conclusion that the property contained only twenty-five percent mobile home parts. We agree with this conclusion since the inspector actually inspected and carefully measured the property. However, we disagree that the price of the house should be reduced by twenty-five percent.

We find that the trial court abused its discretion in simply discounting the price of the home by twenty-five percent. Although Mr. Vance explained that he would have discounted the original value of the home when he appraised it by the percentage of mobile home components, we find that this does not present a true value of the home. The mobile home components do have some value to them.

The evidence in the record indicates that the house could be valued anywhere from $140,000 to $200,000. These figures were based on the home containing forty to fifty percent mobile home parts, as opposed to only twenty-five percent mobile

8

home parts. Obviously, these figures would be higher with only twenty-five percent mobile home parts. Mr. Vance testified that both of these appraised values were reliable. Upon questioning, Mr. Vance agreed that these appraisals should be read together. If you take an average of both values, which were based on forty-fifty percent mobile home components, the result is $170,000, the actual sales price of the house.

We find no evidence in the record to suggest that $170,000 was not a proper value for the home. While we agree that Mr. Waddles was unaware that he was purchasing a home that contained mobile home components, there is no evidence to suggest that the home was not properly valued when he bought it. Therefore, we find no evidence to suggest that damages should be awarded for a reduction in the purchase price. This finding also renders moot any need to discuss the liability of other parties.

Mental Anguish Damages

The trial court also awarded $10,000 as mental anguish damages. Ms. Posey claims that this amount is excessive.

The court found that it was the failure of the realtors to disclose information concerning calls about a trailer that caused Mr. Waddles to feel embarrassment and humiliation. The trial court specifically found:

> [Mr. Waddles] could not see the incorporation of the trailer, so it was not any disappointment in the structure that caused him to suffer the anguish - it was the disappointment in the lack of equal treatment by the realtors. The feeling that you have been taken for a fool or cheated in a business deal is hard enough; but, to feel you have been cheated in the purchase of a retirement home, where you want to live out your days in pleasure and relaxation, is more personal and longer lasting.

In *Hughes*, 836 So.2d 649, the trial court awarded $5,000 in mental anguish damages to a couple whose agent failed to disclose a drainage problem affecting the

9

home they bought. The couple testified about the mental, physical, and financial toll the litigation over the drainage issue had caused them.

Mr. Waddles bought the home as a retirement home. For years he saved money, so he could have $45,000 to use as a down payment. Mr. Waddles testified that he would not have bought the house if he had known it was a mobile home. Mr. Waddles stated that he was embarrassed by the incident to the point of sickness and he feels trapped in his home.

Obviously Mr. Waddles has anxiety that his home has mobile home components to it. He is embarrassed because his neighbors know about it, and he felt tricked into buying the home. We cannot say that $10,000 was an abusively high award.

For reasons discussed, the judgment of the trial court is amended to provide that Ms. Posey and her insurer, Chicago Insurance Company, are only liable for damages in the amount of $6,666.67. This is two-thirds the amount of mental anguish damages awarded. In all other respects, the judgment is affirmed. Costs of this appeal are assessed three-fourths to Fern Posey and Chicago Insurance Company and one-fourth to Jerry Waddles.

**AFFIRMED AS AMENDED**.