REVISED - March 21, 2000

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 99-30780
Summary Calendar

In the Matter of:   HUGUES J. DE LA VERGNE, II,

Debtor,

LOUIS V. DE LA VERGNE,

Appellant,

versus

WAYNE C. DUCOTE,

Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana

March 17, 2000

Before POLITZ, WIENER, and PARKER, Circuit Judges.

POLITZ, Circuit Judge:

Louis V. de la Vergne (Louis) appeals the district court's judgment affirming the bankruptcy court's decision disallowing his claim against the bankruptcy estate of Hugues J. de la Vergne, II.  For the reasons assigned we affirm.

## BACKGROUND

This appeal adds yet another chapter to the exceedingly lengthy and unfortunate litigation involving the de la Vergne family.  On June 24, 1986, Louis received a judgment in Louisiana state court against his brother Hugues and another sibling, Charles, in the amount of $802,000.00 plus judicial interest accruing from February 28, 1979.  On August 12, 1988, Hugues filed a Petition for Relief under Chapter 11 of the Bankruptcy Code.  Louis filed three separate proofs of claim in the bankruptcy

proceeding which spawned further litigation. Hugues continued as a debtor in possession until December 12, 1990, when the bankruptcy court appointed a Chapter 11 Trustee to manage the estate. During the pendency of the bankruptcy case, the debt to Louis was declared non-dischargeable. Thus, as of August 12, 1998, both Hugues, individually, and the bankruptcy estate were liable to Louis for all principal and pre-petition interest, but post-petition interest would accrue only as to Hugues.

In 1992, a multi-party settlement was reached between Louis, the estate, and various other creditors, whereby Louis' claim was credited in an amount totaling $1,463,909.00. These credits were applied to Hugues' individual debt as well as to the estate's debt. As a result of the settlement the bankruptcy estate's indebtedness was $170,488.74. In September of 1995 Louis entered a second settlement agreement, but this time only with Hugues. At the time of the negotiations, Hugues' individual debt to Louis was $595,599.02. This settlement provided that $330,000.00 from Hugues' personal funds would be applied first to court costs ($6,948.95), then to accrued interest ($64,148.28), and finally to principal ($258,902.70). In exchange, Hugues' debt would be extinguished, but Louis reserved any rights he had to seek recovery against the bankruptcy estate.

The Trustee subsequently filed an objection to Louis' proof of claim, contending that the 1995 settlement should have been applied to the principal amount owed by the estate as well. Concluding that Hugues and the estate were solidary obligors for the principal amount of the debt, $170,488.74, the bankruptcy court found that the 1995 settlement extinguished Louis' claim against Hugues' estate. The district court affirmed and this appeal followed.

## ANALYSIS

Our review of the bankruptcy court's findings is the same as that of the district court. Findings of fact are analyzed under the clearly erroneous standard and conclusions

2

of law are afforded *de novo* review.[1]  As a preliminary matter, we note that, contrary to Louis' claim, our analysis is not governed by the laws concerning imputation of payments.  Louisiana Civil Code articles 1864 through 1868 control when several debts are owed by one debtor. They are inapplicable when a single debt is owed by more than one obligor, which is precisely the case at bar.[2]

Louis' principal contention is that the bankruptcy judge erred in concluding that Hugues and the estate were solidary obligors because the estate was not liable for the full amount of Hugues' debt.  We disagree. Under Louisiana law, "[a]n obligation is solidary for the obligors when each obligor is liable for the whole performance.  A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee."[3]  The Louisiana Supreme Court has set forth a three-part test to determine when an obligation is solidary: (1) each obligor is liable for the same debt; (2) each may be compelled for the whole payment; and (3) payment by one exonerates the other from its obligation to the creditor.[4]

We agree with the bankruptcy court that all three requirements are met in this instance.  As appellant concedes, the parties' respective liabilities arose from a single debt derived from the 1986 judgment.  There is no question that the entire debt to Louis became a debt of the bankruptcy estate. When the judgment was declared non-dischargeable, Hugues became solidarily liable as a matter of law for the same debt owed by the estate pre-petition, and solely liable for all interest that would accrue post-petition

---

[1]**Matter of United States Abatement Corp.,** 79 F.3d 393 (5th Cir. 1996).

[2]**Lone Star Indus., Inc. v. American Chemical, Inc.,** 491 So.2d 1333 (La. 1986).

[3]LA. CIV. CODE ANN. art. 1794 (West 1987).

[4]**Hoefly v. Government Employees Ins. Co.,** 418 So.2d 575 (La. 1982); **Osborne v. Ladner,** 691 So.2d 1245 (La. Ct. App. 1997).

until the judgment was satisfied.[5] Thus, either party may be compelled to pay the entire pre-petition indebtedness. Because Louis cannot doubly recover this amount, any payment necessarily exonerates the other obligor to the extent of that payment.[6] By the express terms of the agreement, $258,902.70 was applied towards principal. As of the settlement date, both Hugues and the estate were solidarily liable for $170,488.74. Accordingly, the bankruptcy court correctly extinguished the debt owed by the estate.

That the estate is not liable for the post-petition interest owed on the judgment does not defeat the solidary nature of the debt owed prior to Hugues' petition for bankruptcy.[7] "Obligations may be solidary even though the debtors are bound differently from each other, and even if their obligations are subject to different terms and conditions."[8] Our conclusion that Hugues and the estate are solidary obligors is further buttressed by the terms of the 1992 settlement agreement, entered into after Hugues' debt was declared non-dischargeable, which provided that payments made by the bankruptcy estate towards Louis' claim were to be applied to Hugues' individual debt as well as to that of the estate.

Louis next claims that the 1995 Receipt and Mutual Release was intended to apply solely to Hugues' individual debt "outside the bankruptcy," thereby leaving intact the estate's liability "inside the bankruptcy." He contends that this intent is evinced by the

---

[5]**Stonecipher v. Mitchell,** 655 So.2d 1381 (La. Ct. App. 1995) ("Solidary liability is not presumed. It arises from a clear expression of the parties' intent or from the law." (citing LA. CIV. CODE ANN. art. 1796 (West 1987))).

[6]**Williams v. Sewerage & Water Bd. of New Orleans,** 611 So.2d 1383, 1388 (La. 1993) ("The injured [party] is not allowed to obtain double recovery on those elements of damages which are coextensive."); **Fertitta v. Allstate Ins. Co.,** 462 So.2d 159 (La. 1985); **Gulf States Land & Dev., Inc. v. Ouachita Nat'l Bank,** 705 So.2d 189, 193 (La. Ct. App. 1997) ("When one solidary obligor pays the debt in full, the creditor can collect nothing more from the other obligors.").

[7]**Williams,** 611 So.2d at 1387 ("[T]he obligations of the [parties] are solidary to the extent they share coextensive liability to repair certain elements of the same damage.") (citations omitted); **Gulf States Land & Dev. Inc. v. Ouachita Nat'l Bank,** 705 So.2d at 191.

[8]**Williams,** 611 So.2d at 1388; **Bradley v. Mike Rougee Corp.,** 676 So.2d 1111 (La. Ct. App. 1996); LA. CIV. CODE ANN. art. 1797 (West 1987).

4

terms of the agreement which specifically reserved his rights against the estate. We are not persuaded. The Civil Code provides a remedy for a solidary obligor who may be disadvantaged by another obligor's settlement with the obligee.[9] Under this article, the solidary obligor who has not reached a compromise agreement is entitled to have his debt reduced to the extent of the payment.[10] Accordingly, by the express terms of the settlement, the estate is entitled to have its portion of the debt reduced by the amount of principal paid towards Louis' claim. Further, inasmuch as the agreement did not specify that payment was to be made only to the debt "outside the bankruptcy," the estate is entitled to have the principal payments credited towards its indebtedness, thereby extinguishing its liability.[11] Inherent in settlement negotiations is the parties' relinquishment of some of their rights in order to reach a mutual agreement. In this case, Louis gave up a portion of the total amount he was entitled to collect from Hugues in order to be guaranteed a definite payment at a certain time. By attempting to recover further payments from the estate, Louis is seeking to recoup from the estate that which he gave up in the settlement negotiations with Hugues. This he is not permitted to do.

The decision appealed is AFFIRMED.

---

[9]LA. CIV. CODE ANN. art.1803 (West 1987). Under this article:
Remission of a debt by the obligee in favor of one obligor, or a transaction or compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that obligor.
*Id.*

[10]**Osbourne,** 691 So.2d at 1256; **Mott v. Brister's Thunder Karts, Inc.,** 663 So.2d 233, 235 (La. Ct. App. 1995).

[11]**Ortego v. State Dep't of Transp. and Dev.,** 689 So.2d 1358, 1363 (La. 1997) ("The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the instrument's four corners, and extrinsic evidence is inadmissible either to explain or to contradict the instrument's terms.") (citations omitted).